97 F.3d 142
 UNITED STATES of America, Plaintiff-Appellee,
v.
Vincent WELCH (95-3484), Michael Clemmons (95-3676), Quinton
Parker (95-3674), Antario Mercury (95-3673), Erick
Jackson (95-3672), and Matt Lindsey
(95-3670), Defendants-Appellants.
 Nos. 95-3484, 95-3670, 95-3672 to 95-3674 and 95-3676.
 United States Court of Appeals,
Sixth Circuit.
 Argued and Submitted Aug. 8, 1996.
Decided Oct. 2, 1996.
 
 Salvador A. Dominguez (briefed), Office of the U.S. Attorney, Columbus, OH, for U.S.
 William Joseph Edwards (briefed), Columbus, OH, for Vincent Welch.
 Larry Wayne Thomas, Thomas & Dixon (briefed), Columbus, OH, for Matt Lindsey.
 Jonathan A. Woodman, Abroms & Weisz (argued and briefed), Columbus, OH, for Erick Jackson.
 Gregg R. Lewis (briefed), Columbus, OH, for Antario B. Mercury.
 Victor D. Merullo, Merullo, Reister & Swinford (argued and briefed), Columbus, OH, for Quinton Parker.
 Fred Thomas (argued and briefed), Columbus, OH, for Michael Clemmons.
 Before: KENNEDY, WELLFORD, and SILER, Circuit Judges.
 KENNEDY, Circuit Judge.
 
 
 1
 Defendants raise numerous issues following their conviction and sentencing for acts alleged to have occurred as part of a conspiracy to distribute cocaine in Columbus, Ohio, between 1988 and 1993. For the following reasons, we AFFIRM, in part, REVERSE, in part, and REMAND for proceedings consistent with this opinion.
 
 I.
 
 2
 In early 1994, a federal grand jury returned a twenty-nine count indictment charging fifteen people, including the six individuals whose appeals are the subject of this opinion, with a variety of federal criminal offenses stemming from a conspiracy to sell cocaine in the form of powder and so-called base (herein referred to as "crack," as it is widely known) in Columbus, Ohio.
 
 
 3
 In Count 1, all six appellants (and other individuals) were charged with conspiracy in violation of 21 U.S.C. § 846, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 841(b)(1)(B)(iii). Counts 2, 11, and 12 charged Quinton "Heavy" Parker (hereinafter Parker)[1] with possession with intent to distribute cocaine, possession with the intent to distribute more than fifty grams of cocaine base, and using a firearm during and in relation to a drug trafficking crime.[2] Counts 7, 8, and 13, charged Antario "Rio" Mercury (hereinafter Mercury) with possession with intent to distribute cocaine and with using a firearm during and in relation to a drug trafficking crime.[3] Counts 9 and 10 charged Matt "Yellow Boy" Lindsey (hereinafter Lindsey) with possession with the intent to distribute more than five grams of cocaine base and using a firearm during a drug trafficking crime.[4]
 
 
 4
 Appellant Vincent "L" Welch (hereinafter Welch) entered a guilty plea to Count 1 of the indictment pursuant to a plea agreement. Appellants Clemmons, Jackson, Mercury, Lindsey and Parker opted for trial by jury. At trial, evidence adduced through Welch and other witnesses portrayed the following scenario:
 
 
 5
 In 1987, because the cocaine market in Detroit, Michigan, was saturated and the market in Columbus, Ohio, more promising, Welch decided to move to Columbus to sell cocaine. For the next two years, Welch supplied cocaine to a number of smaller drug dealers in Columbus, many of whom had been recruited from Detroit. Defendants Parker, Mercury, Lindsey, Erick "Little E" Jackson (hereinafter Jackson), and Michael "Biff" Clemmons (hereinafter Clemmons) were supplied with cocaine powder and crack cocaine either directly from Welch or through a "lieutenant" of his, Raylan "Butch" Lyons (hereinafter Lyons).
 
 
 6
 In the winter of 1989, Welch went to prison, having been convicted of carrying a concealed weapon and sentenced to eighteen months of incarceration. Welch left Lyons with thirteen-and-a-half ounces of cocaine and control over his drug business. Jackson, Mercury, Lindsey and others continued selling crack supplied by Lyons from several "crack houses" which were protected by a small arsenal of handguns.
 
 
 7
 At the end of 1990, Welch was released from prison. He soon returned to Columbus, and found that Lyons now was supplying cocaine to Jackson, Mercury, Parker, Lindsey and others. In spite of the fact that Welch apparently was unable to "get back on" with Lyons, i.e., regain his old position in the drug dealing enterprise, Welch admitted at trial that he continued to deal in cocaine both in Detroit, Michigan, and Columbus, Ohio, upon release from prison. Evidence adduced at trial suggested that Welch and his codefendants continued dealing drugs until 1994, by which time the last of them was apprehended and charged.
 
 
 8
 Welch implicated all of his codefendants in a conspiracy to deal cocaine powder and cocaine base in Columbus, Ohio. In addition, Keith "Ace" Baldwin, William Anthony Givens, Edward "Worm" Hampton, Jeffrey "Freeze" Morris, Vinson "Rocco" Smith, Marcus "E" Tucker, and Glenn Williams all testified as to their personal involvement with defendants in the Columbus cocaine conspiracy. Finally, testimony was also elicited from law enforcement officers, Rodney Russell of the Bureau of Alcohol, Tobacco and Firearms, and Don Secrest of the Columbus Police Department's Narcotics Bureau, as to aspects of the case against several defendants.
 
 
 9
 At the conclusion of that trial, the jury found each of the five defendants who were tried guilty of Count 1, the conspiracy count. Additionally, Mercury was found guilty of Counts 7 and 8 (Count 13 having been dismissed on the government's motion at the close of its evidence). Lindsey was found guilty of Counts 9 and 10. Parker was found guilty on Counts 2, 11, and 12 of the indictment.
 
 
 10
 Welch appeals the sentence he received following entry of his guilty plea. In particular, he appeals the District Court's refusal to depart from the guideline range in spite of the government's motion under section 5K1.1, which gives discretion to the court to depart downward from the guidelines for substantial assistance to authorities. See United States Sentencing Commission, Guidelines Manual (hereinafter U.S.S.G.) § 5K1.1. The District Court sentenced Welch to the minimum guideline range sentence and stated that, without the 5K1.1 motion, the court would have been inclined to depart upwardly from the guidelines (in light of a perceived inadequacy of Welch's criminal history category, see U.S.S.G. § 4A1.3).
 
 
 11
 Codefendants Clemmons, Parker, Jackson, Lindsey and Mercury raise a host of arguments on appeal and, pursuant to rule 28(i) of the Federal Rules of Appellate Procedure, adopt by reference the issues and grounds raised in one another's briefs.
 
 II.
 A. LINDSEY AND SEVERANCE
 
 12
 Appellant Lindsey argues that the District Court erred in its denial of his motion for severance. We review denials of motions to sever for abuse of discretion and accord the District Court great deference. United States v. Breinig, 70 F.3d 850, 852-53 (6th Cir.1995); United States v. Medina, 992 F.2d 573, 587 (6th Cir.1993)(showing of "strong prejudice" required), cert. denied, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994).
 
 
 13
 Defendant argues that his right to a fair trial was prejudiced by being tried with multiple defendants in a twenty-nine count indictment wherein only three counts pertained to him. There was, he argues, a clear likelihood of confusion on behalf of the jury. Such a likelihood, to the degree that it existed, is insufficient by itself to establish that the District Court abused its discretion in denying defendant's motion to sever. As an initial matter, juries are presumed capable of sorting evidence and separately considering each count and each defendant. Medina, 992 F.2d at 587. Furthermore, even if there had been some risk of jury confusion (for which defendant in this case provided no proof), that risk must be balanced against society's need for speedy and efficient trials. Id. "There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). Defendants are not entitled to a separate trial "simply because they have a better chance of acquittal if they were tried alone." Breinig, 70 F.3d at 853; see also Zafiro, 506 U.S. at 540, 113 S.Ct. at 938-39. Lindsey failed to show the required factually specific and compelling prejudice arising from joint trial to merit severance. See United States v. Benton, 852 F.2d 1456, 1469 (6th Cir.), cert. denied, 488 U.S. 993, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988).
 
 
 14
 B. PARKER'S MOTION FOR ACQUITTAL FOLLOWING GOVERNMENT'S OPENING STATEMENT
 
 
 15
 When the government concluded its opening statement in the District Court, defendant Parker moved for acquittal on Count 12, which charged him with the use of a firearm in relation to a drug trafficking crime. Parker's motion was based upon the fact that, in its opening statement, the government did not mention specifically any facts underlying that particular count.
 
 
 16
 This issue is a matter of first impression for this circuit; fortunately, its novelty is not matched by any degree of complexity. We agree with the First Circuit that a district court's denial of defendant's motion for acquittal following the government's opening statement is not reviewable. See United States v. Ingraldi, 793 F.2d 408, 414 (1st Cir.1986).
 
 
 17
 In the absence of reviewability of the denial of defendant's motion for acquittal following the government's opening statement, defendant's right to appeal the sufficiency of the evidence adequately protects the defendant. Defendant in this case conceded at oral argument that the government arguably need not present any opening statement at all. See id. If appellant concedes that the government can skip its opening statement altogether, we do not see how appellant can argue logically that the failure to recite facts underlying one of several counts could merit the grant of a motion of acquittal as to that count.
 
 
 18
 Those courts that have held that a motion for acquittal following the government's opening argument is reviewable have reviewed the District Court's actions under an abuse of discretion standard. They have held that such a motion should be granted after the government's opening statement only when the statement clearly shows that the charge against defendant "cannot be sustained under any view of the evidence consistent with the statement." McGuire v. United States, 152 F.2d 577, 580 (8th Cir.1945); see also United States v. Oliver, 570 F.2d 397, 400 (1st Cir.1978); United States v. Capocci, 433 F.2d 155, 158 (1st Cir.1970). An opening statement which is silent as to the underlying facts of a charge cannot, by that fact alone, be inconsistent with the evidence of the charge. The District Court's denial of defendant's motion, therefore, even if we had held it to be reviewable, would not have been error by this standard.
 
 C. SUFFICIENCY OF THE EVIDENCE
 
 19
 With the exception of Welch, all the defendants in this case moved for acquittal on the basis of insufficient evidence to support their convictions pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. We consider the evidence and inferences in the light most favorable to the government and we refrain from independently judging the credibility of witnesses or weight of the evidence. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Collins, 78 F.3d 1021, 1030 (6th Cir.1996). With the exception of one count charged to one defendant, Lindsey, we affirm the District Court's denials of defendants' motions.
 
 
 20
 All of the defendants were found guilty of belonging to and participating in a drug conspiracy, a verdict requiring proof of (1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991). A plethora of evidence was introduced at trial to the effect that all the defendants in this case distributed crack cocaine on multiple occasions in Columbus, Ohio, in violation of drug laws. Furthermore, from the evidence introduced at trial one would have to infer that defendants acted and intended to act collectively to violate drug laws.
 
 
 21
 At trial, witnesses testified as to Clemmons' purchases of significant quantities of crack on several occasions, of Parker's recruitment of others to sell crack, of Parker's, Lindsey's, and Mercury's sales of several ounces of crack and of Jackson's maintenance of several "crack houses." This brief recital is a cursory glance at extensive activities which took place over a period of four years and of which the record in this case provides ample evidence. As to Clemmons' claim that he was a "mere buyer" rather than a participant in a conspiracy, the quantities of his multiple purchases belie the claim. See United States v. White, 932 F.2d 588, 590 (6th Cir.1991)(intent to distribute may be inferred from possession of large quantities of substance). In addition, there was evidence that Clemmons moved from Detroit to Columbus specifically at Lyons' request and specifically to sell drugs. Upon his arrest, Clemmons not only was found in possession of a rather incriminating collection of what might be termed drug-dealing paraphernalia (firearm, bullet-proof vest, ammunition, scale), but also, when interrogated, he illustrated detailed knowledge of this far-reaching crack distribution network.
 
 
 22
 Defendants' principal argument with regard to the sufficiency of the evidence is that much of the evidence against them was supplied by individuals cooperating with the government as a result of a plea bargain. In reviewing the sufficiency of the evidence, however, this fact is irrelevant. See United States v. Hilliard, 11 F.3d 618, 620 (6th Cir.1993) ("In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence [or] consider the credibility of witnesses ...."), cert. denied, 510 U.S. 1130, 114 S.Ct. 1099, 127 L.Ed.2d 412 (1994); see also Bourjaily v. United States, 483 U.S. 171, 180, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987)(coconspirators' statements could be probative both of existence of conspiracy and participation).
 
 
 23
 Defendants' second argument is based on testimony elicited on cross-examination of a number of government witnesses that "there was no agreement to do anything." Considering the evidence and inferences in the light most favorable to the government, however, testimony that they lacked the prerequisite agreement on which to base the conspiracy convictions does not render all the other evidence of conspiracy insufficient. In fact, other evidence of conspiracy was overwhelming and often offered by the same witnesses who testified as to no agreement. Vinson Smith, for one, testified that there was no agreement; he also testified to his dealing crack with several others in several locations over several years (1989-1993), to maintaining along with others crack houses fortified by firearms, to processing cocaine powder into crack by the kilo with others, and, finally, to transporting, along with others, multiple kilos of cocaine through interstate commerce. Such testimony, in spite of Smith's statement of "no agreement," surely could justify a finding of conspiracy beyond a reasonable doubt. The District Court was not clearly erroneous in holding that sufficient evidence supported convictions on Count 1 for all defendants in this case.
 
 
 24
 Concerning Lindsey and the sufficiency of the evidence for convictions on Count 10, however, we must reverse the District Court's denial of defendant's Rule 29 motion. Count 10 charged Lindsey with the use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).
 
 
 25
 This charge against Lindsey resulted from a raid by the Bureau of Alcohol, Tobacco and Firearms (the "ATF") of a home located at 1466 Mount Vernon Avenue in Columbus, pursuant to a search warrant on August 6, 1992. ATF agent Rodney Russell, who participated in execution of the warrant, provided most of the evidence against Lindsey.[5] Russell identified Matt Lindsey as having been at the Mount Vernon Avenue home at the time of the August 6 raid, and, at that time, in possession of a pager and several hundred dollars in cash. The pager had been rented on the day before, under the name of Matthew Tillman. The home was occupied by a woman named Delores Tillman who attended to utility bills and the like.
 
 
 26
 Russell testified that Lindsey and two others, when confronted with a search warrant, ran up the stairs, tried to escape through a second-story window, and were apprehended on a roof outside the window. In the upstairs room from which the trio attempted escape, the ATF found three hand guns and a false-bottomed container containing six grams of crack. Lindsey's conviction for violation of § 924(c) was based on these events.
 
 
 27
 The lack of evidence with regard to Count 10 requires reversal. The Supreme Court in Bailey v. United States, --- U.S. ----, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), held that § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Bailey, --- U.S. at ----, 116 S.Ct. at 505 (emphasis in original); see also id. at ----, 116 S.Ct. at 508-09 (providing illustrations of "active employment" and holding that "the inert presence of a firearm, without more, is not enough to trigger § 924(c)(1)."). The government offered no proof of any "use" of the firearms by Lindsey, as the Supreme Court has construed the word in the context of § 924(c)(1). There was therefore insufficient evidence in the record from which any reasonable trier of fact could infer defendant's guilt beyond a reasonable doubt for Count 10 of the indictment and the conviction must be vacated.
 
 
 28
 Reversal of Lindsey's § 924(c) conviction means remand is appropriate for resentencing. The government now may seek sentencing enhancement for firearm possession. See U.S.S.G. § 2D1.1(b)(1) (1994); United States v. Clements, 86 F.3d 599, 600-01 (6th Cir.1996).
 
 
 29
 With regard to Count 9, charging Lindsey with possession with intent to distribute more than five grams of cocaine base on August 6, 1992, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 18 U.S.C. § 2, the government need not have provided evidence of actual possession; proof of constructive possession suffices. White, 932 F.2d at 589. The issue, therefore, is whether the evidence in this case could support a jury finding that defendant "knowingly has the power and the intention at a given time to exercise dominion and control over" the crack cocaine found at 1466 Mount Vernon, "either directly or through others" beyond a reasonable doubt. United States v. Reeves, 794 F.2d 1101, 1105 (6th Cir.) (quoting United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973)), cert. denied, 479 U.S. 963, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986). This may be established through circumstantial evidence. White, 932 F.2d at 590.
 
 
 30
 We held in White that proof of the "mere presence" of the defendant in proximity to the controlled substance, by itself, is insufficient evidence to establish possession with intent to distribute beyond a reasonable doubt. Id. at 589-90. In this case, there was more than "mere presence" for the jury to consider. There was extensive evidence of Lindsey's involvement in a conspiracy to distribute cocaine and specifically his having sold cocaine from a crack house on Mount Vernon Street. Marcus Tucker, for example, testified to "several" purchases from Lindsey of crack at the Mount Vernon address. Furthermore, Lindsey, when searched during the ATF raid, possessed a pager and a large sum of cash. He gave the ATF a false name and attempted to flee the scene. Finally, from the fact that the home was in the name of Delores Tillman and Lindsey had given the pseudonym of Matt Tillman on the day before the raid when acquiring his pager, the jury reasonably could infer that Lindsey resided in the house, or at least had more than a passing connection. From all of this evidence, a reasonable jury could find Lindsey guilty beyond reasonable doubt as to possession of the cocaine. Circumstantial evidence may be sufficient, id. at 590, and in its totality, the circumstantial evidence in this case is sufficient to support the jury's verdict. See United States v. Peters, 15 F.3d 540, 544 (6th Cir.) (discussing "strong presumption in favor of sustaining a jury conviction"), cert. denied, 513 U.S. 883, 115 S.Ct. 219, 130 L.Ed.2d 146 (1994).
 
 
 31
 Concerning Mercury and the sufficiency of the evidence for convictions on Counts 7 and 8, we affirm the District Court. Counts 7 and 8 charged Mercury with the knowing and intentional unlawful possession of with intent to distribute cocaine during the month of June, 1992, and using a firearm in relation to a drug trafficking crime. At trial, Jeffrey Morris testified that he witnessed Mercury, armed with a .45 caliber hand gun, purchase four-and-a-half ounces of cocaine in June of 1992. Defendant questions the credibility of a witness who has "made a deal" with the government (in the form of a plea bargain). As previously stated, however, in reviewing the sufficiency of the evidence, we do not weigh credibility so long as it is not facially insubstantial or incredible. The evidence here is a sufficient basis for a jury conviction.[6] See Hilliard, 11 F.3d at 620.
 
 
 32
 Concerning Parker and the sufficiency of the evidence for convictions on Counts 2 (possession with intent to distribute cocaine base), 11 (possession with intent to distribute more than fifty grams of cocaine base), and 12 (use of a firearm in relation to a drug trafficking crime), we affirm the District Court.
 
 
 33
 Count 2 is supported most directly by testimony of Detective Don E. Secrest of the Columbus Police, Narcotics Bureau, who testified to a raid of 93 Woodland Avenue on August 30, 1989, where he found Parker and three others, "a good sized amount of cocaine" (approximately twenty-seven grams of crack and fifty-four grams of cocaine powder), and crack processing equipment. The apartment was small and only Parker and one other individual were inside at the time of the raid; the drugs and paraphernalia were in plain view in the apartment's kitchen area. Parker, when confronted, gave the police a false name. In light of the quantity of cocaine in the residence, the residence's small size with the drugs in plain view, the defendant's evasive behavior, and the copious evidence of Parker's involvement in other aspects of this far-reaching drug distribution conspiracy (see, e.g., infra, Sec. II.D.3.b. mentioning cocaine quantities attributable to Parker), the evidence against Parker for Count 2 was sufficient. Cf. Hilliard, 11 F.3d at 620 (similar facts, claim, and result).
 
 
 34
 With regard to Counts 11 and 12, the testimony of Keith Baldwin was sufficient evidence to convict Parker. Baldwin testified that Parker was present during the distribution of two kilos of cocaine (of which Parker received a share) and that Parker had a MAC-11 firearm to be used for protection during the processing of the cocaine into crack and its subsequent distribution. The District Court was not clearly erroneous in concluding that a reasonable jury could infer guilt beyond a reasonable doubt from this eye-witness testimony.
 
 D. SENTENCING
 
 35
 1. Welch and the District Court's Refusal to Depart Downward for his Substantial Assistance
 
 
 36
 The parties agree that defendant Welch's adjusted offense level was 39; he had a criminal history of zero, placing him in Category 1, calling for a sentence of 262-327 months under the appropriate Sentencing Guidelines (the 1994 Guidelines). The government filed a motion for downward departure pursuant to U.S.S.G. § 5K1.1, which the District Court, in fact, granted, but Welch still received a sentence of 262 months.
 
 
 37
 While recognizing Welch's substantial assistance, the District Court also found that defendant's criminal history category did not reflect adequately the seriousness of past criminal conduct. Specifically, the District Court found by a preponderance of the evidence that Welch's use of firearms in his drug-dealing was accounted for inadequately in his criminal history as well as Welch's involvement in a brutal murder of a pregnant woman. Any benefit, therefore, from Welch's substantial assistance to the prosecution was offset by recognition of this sentencing factor.
 
 
 38
 When the District Court is aware of its discretion to depart from the guidelines, failure to do so is not appealable. United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990). Welch does not argue, nor could he argue in good faith, that the District Court was unaware that it had the discretion to depart from the guideline sentence. His sentence, therefore, at the bottom of the guideline range (the District Court would have departed upward because of the criminal history issues had it not been for the government's 5K1.1 motion) is not appealable.
 
 
 39
 2. Jackson, Mercury, & Minimal Participation
 
 
 40
 In the calculation of a defendant's base offense level for the sentencing purposes under the guidelines, the District Court considers defendant's role in the offense, which may be the basis for either an increase or a decrease in defendant's base offense level. See U.S.S.G. §§ 3B1.1, 3B1.2. In the presentence reports of Jackson and Mercury, probation officers recommended no adjustments for role in the offense. Jackson and Mercury appeal the District Court's adoption of the probation officers' recommendations with regard to their roles in the offense. We review the District Court's determinations as to defendants' roles in the offenses of conviction for clear error. United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990).
 
 
 41
 We reject the arguments of defendants Jackson and Mercury that the District Court was clearly erroneous when it declined to decrease their offense levels on the basis of their having been minor participants in the criminal activity for which they were convicted. Such a determination is "heavily dependent on the facts of the particular case." U.S.S.G. § 3B1.2, background comment ("This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.").
 
 
 42
 We agree with the District Court that the nature and length of Jackson's involvement in this conspiracy suggest his ineligibility for a mitigating role adjustment. The trial included testimony that Jackson recruited others to traffic drugs, had "a couple of crack houses" in 1988, dealt numerous ounces of crack in 1990, and that he received several ounces of crack in 1992. See id.
 
 
 43
 With regard to Mercury, the District Court found that, with approximately 347 grams of cocaine base and 245 grams of cocaine powder attributable to him and his frequent possession of firearms in connection with drug trafficking, ascribing a minor role to him was improper. The District Court found the reduction of offense level particularly inappropriate in light of the fact that the full amount of drugs possessed by others in the conspiracy were not attributed to Mercury even though such drugs were arguably within his knowledge and foreseeable to him. We agree.
 
 3. Relevant Conduct Determinations
 
 44
 Appellants Jackson and Parker contend the District Court's findings as to their relevant conduct, specifically, the amount of drug trafficking attributable to them, are clearly erroneous. We review the District Court's determination for clear error; the quantity of drugs must be established by a preponderance of the evidence. United States v. Moss, 9 F.3d 543, 552 (6th Cir.1993).
 
 
 45
 a. Erick Jackson
 
 
 46
 The total amount of cocaine attributed to Jackson by the District Court for the purposes of sentencing was 1,725.97 grams. That amount was derived from evidence in the record of drug trafficking in numerous locations in the Columbus, Ohio area, plus two transactions with major drug dealers Welch and Lyons, plus cocaine found in Jackson's possession when arrested in Columbus on April 20, 1989, and cocaine confiscated from him when arrested on May 14, 1992. One of the instances of drug trafficking, however, does not appear to have included Erick Jackson. Another attributed drug quantity is not supported by the evidence cited by the District Court. Jackson's sentence must therefore be vacated and the case remanded for resentencing.
 
 
 47
 Jackson correctly points out, for example, that the District Court erroneously attributed to him the sale of nine ounces of crack cocaine from a residence at 22nd Street and Gilbert Avenue. The evidence in the record suggests that the District Court relied on the presentencing report which, in turn, confused Erick Jackson with Erick Flavors. The government does not dispute Jackson's assertion that Jackson and Flavors are two separate individuals and conceded as much at oral argument.
 
 
 48
 Furthermore, the District Court attributed to defendant the distribution of eighteen ounces of crack cocaine from a residence on Fair Avenue. Jackson points out, however, that the District Court relied again on the presentencing report which, in turn, erroneously relied on testimony of Vincent Welch and Edward Hampton for that drug quantity. In fact, Hampton testified that he and Jackson had trafficked in four to five ounces from the Fair Avenue residence. Welch testified that he was unable to recall the quantity trafficked at that address. There appears to have been, therefore, no evidence in the record to support the eighteen-ounce quantity trafficked at Fair Avenue.[7]
 
 
 49
 In addition, Jackson points to the District Court's statement that there was evidence of a particular transaction involving Jackson and Vincent Welch when, in fact, it involved Jackson and Vincent Wilson (a.k.a., Vinson Smith, see, supra, note 1). The error was pointed out to the District Court and the record shows that the District Court corrected itself. Therefore, the attribution by the District Court of two ounces to Erick Jackson stemming from drug trafficking in the Clifton Court apartments in June of 1989, was not clearly erroneous.
 
 
 50
 The government responds to Jackson's arguments on appeal regarding quantity of drugs by pointing to evidence of other drug transactions attributable to Jackson. According to Jackson, however, the District Court already took those amounts into account. If this assertion is correct, those quantities obviously cannot be counted twice. Conversely, any transaction not relied upon by the District Court at sentencing cannot be a ground for affirming the District Court's sentence. Remand is therefore appropriate in any event so that the District Court may make a finding that the drug quantities that form the basis of defendant's sentence are attributable to the defendant and are supported by a preponderance of the evidence. See United States v. Blankenship, 954 F.2d 1224, 1228 (6th Cir.) (remand appropriate for specific findings and particularized reasons for sentence), cert. denied, 506 U.S. 901, 113 S.Ct. 288, 121 L.Ed.2d 213 (1992). On remand, the government will have ample opportunity to present evidence of any attributable drugs it feels were not considered adequately in the District Court's original calculation. See United States v. Duso, 42 F.3d 365, 368 (6th Cir.1994)(sentencing judge may revisit entire sentencing procedure unless restricted by remand order).
 
 
 51
 b. Quinton Parker
 
 
 52
 The total amount of crack cocaine attributed to Parker by the District Court for the purposes of sentencing was 2,148.57 grams. That amount was derived from evidence in the record of defendant's involvement with drug trafficking in numerous locations in the Columbus, Ohio area, plus quantities of cocaine in Parker's possession when arrested on three occasions, plus two kilos of cocaine which were processed into crack in Parker's presence by Vincent Wilson at 4203 Sundance Court.
 
 
 53
 Before the District Court, Parker objected to the particular part of the presentence report which suggested his presence at the processing of the two kilos of cocaine powder into crack, pointing out that Vincent Wilson's testimony was not, as the District Court appeared to believe, that Parker presided over the processing. In fact, Parker pointed out, Wilson could not say for sure whether Parker was present.
 
 
 54
 While Parker points correctly to this discrepancy, we do not find the District Court's calculation of drug amounts attributable to Parker to be clearly erroneous. Wilson did not testify that Parker was not present; he just said he was not sure. In fact, Wilson testified with certainty that Parker participated in drug dealing in that very apartment (referred to as the "Winchester" apartment) and that the apartment was used for "cooking up weight." Furthermore, Keith Baldwin testified without equivocation that Parker was present when two kilos of crack were delivered and processed. Importantly, the testimony of Baldwin and Wilson was otherwise entirely consistent regarding several other individuals present. Thus, the District Court's overruling of Parker's objection to the factual finding had better support in the record than the District Court articulated at the time; the District Court's attribution of two kilos to Parker was not clearly erroneous.[8]
 
 E. CONSTITUTIONAL ARGUMENTS
 
 55
 1. Constitutionality of the 100:1 Ratio Between Cocaine Base (Crack) and Cocaine Powder for Sentencing Purposes in the Guidelines
 
 
 56
 This Court has held repeatedly that objections to the Sentencing Guidelines' disparate punishments for crimes involving crack cocaine and cocaine powder are meritless and the disparity is insufficient grounds for downward departure from guideline sentences. See United States v. Lloyd, 10 F.3d 1197, 1220 (6th Cir.1993), cert. denied, 513 U.S. 883, 115 S.Ct. 219, 130 L.Ed.2d 147 (1994); United States v. Tinker, 985 F.2d 241, 242 (6th Cir.1992), cert. denied, 507 U.S. 1040, 113 S.Ct. 1872, 123 L.Ed.2d 491 (1993); United States v. Pickett, 941 F.2d 411, 418-19 (6th Cir.1991). We are bound by Circuit precedent. Salmi v. Secretary of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985).
 
 
 57
 2. Constitutionality of the Completion of the Presentence Report Prior to Jury Verdict
 
 
 58
 Defendant Clemmons, noting that the presentence report's section on offense conduct was "primarily compiled prior to trial," contends that "[i]t is, therefore, a violation of [his] due process rights to utilize information gather[ed] and compiled prior to [his] trial to determine the defendant's culpability in the charged offense." The argument is obviously without merit. Although Clemmons is right when he argues that, constitutionally, "one cannot make a finding [of guilt] prior to trial," he was found guilty by a jury which reached a verdict after trial (and there is no allegation that the jury had knowledge of the presentence report). Clemmons' suggestion that the compilation of the offense conduct section of the presentence report prior to the jury verdict somehow runs afoul of the constitutionally-enshrined presumption of innocence, thus, is unfounded.
 
 III.
 
 59
 For the preceding reasons, we AFFIRM, in part, REVERSE, in part, and REMAND for proceedings consistent with this opinion.
 
 
 
 [1]
 This Section includes the nicknames of the defendants to assist in following references to defendants by these names in the testimony and other evidence that is part of the joint appendix. Along the same lines, it should be made clear early on that Vinson E. Smith is referred to throughout the briefs and trial as Vincent Wilson
 
 
 [2]
 In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 18 U.S.C. § 924(c) and 18 U.S.C. § 2
 
 
 [3]
 In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c), and 18 U.S.C. § 924(c)
 
 
 [4]
 In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), 18 U.S.C. § 2, and 18 U.S.C. § 924(c)
 
 
 [5]
 With regard to Count 9, the record also contains testimony from Marcus Tucker that he purchased crack from Matt Lindsey from a residence on Mount Vernon Street in 1992
 
 
 [6]
 Morris testified that the gun was carried by Mercury, visibly, during a drug transaction. This constitutes not just carrying a gun but also using a gun in relation to drug trafficking so Mercury has no Bailey claim here. See Bailey, --- U.S. at ----, 116 S.Ct. at 507
 
 
 [7]
 There was, however, another eighteen-ounce transaction for which there was evidence in the record and which was included in the District Court's calculation
 
 
 [8]
 It is true that the District Court did not make a credibility determination with regard to Baldwin as to this precise testimony. Although Parker does not make the argument, a co-defendant argues in an analogous situation that remand is therefore appropriate in order that the District Court make a credibility determination regarding the specific testimony that forms the basis of the District Court's finding
 Under the facts here, however, remand would be a waste of judicial resources. The District Court at no point questioned the credibility of any of the testimony of Keith Baldwin. See, e.g., JA at 424-27 (judgment and sentence of Clemmons, based, in part, on testimony of Baldwin of which District Court noted, "The Court had an opportunity to assess this testimony and has no reason to question its veracity."). Furthermore, in crediting the version of events as described in the presentence report and as the District Court believed Wilson testified, it implicitly made a credibility determination with regard to Baldwin who testified consistently as to this version of the same events.