NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0278n.06

No. 10-4256

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 13, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| LINNARD LAWSON, | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:     MERRITT and COLE, Circuit Judges; VARLAN, District Judge.[*]

COLE, Circuit Judge.   Defendant Linnard Lawson appeals his convictions under 21 U.S.C. § 841(a)(1) and (b)(1)(A) for possession with intent to distribute fifty or more grams of crack cocaine as well as being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). We AFFIRM.

I.  BACKGROUND

On January 18, 2008, Drug Enforcement Agency agents and local law enforcement officers executed a search warrant on a house located at 208 Needham Street in East Liverpool, Ohio.  The officers arrived at the house mid-morning and, after nobody answered the door, forcibly entered. Once inside the home, the officers found Lawson and Ikeima Abercrombie standing at the top of the

---

[*] The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

stairs, in various states of undress. They permitted Lawson to dress, handcuffed him, took him down to the kitchen, and read him his *Miranda* warnings, which he waived.

As the officers conducted an initial sweep and secured the scene, they observed a .380 automatic pistol in the living room. An officer then asked Lawson whether he kept any other weapons or drugs in the house, to which he replied, "you already found the gun," but further admitted that there might be drugs in his pants, which were draped over a kitchen chair. After unsuccessfully searching Lawson's clothing, officers again asked if there were more weapons or drugs in the home, and, in response, Lawson nodded his head toward the microwave area and said "over in the container, over there by the microwave." A search of the microwave area yielded three smaller bags, each containing roughly five grams of crack cocaine, hidden in a porcelain container as well as a box of .380 caliber ammunition stashed in a crouton bag. Meanwhile, officers upstairs found a plastic bag containing 181.3 grams of crack cocaine and roughly $7,000 hidden above the bedroom ceiling tiles. The officers brought the contraband downstairs to take inventory, and one officer asked Lawson whether his fingerprints were on the narcotics bags, to which he indicated that they might find his fingerprints there. Later that day, after the officers removed Lawson from the house, they also seized $1,090 from his jacket.

The officers searched the Needham Street residence under a search warrant for all financial statements and instruments, business records, travel documents, narcotics and narcotics paraphernalia, firearms, and currency. A magistrate judge issued this search warrant based on an affidavit by Officer Erik Kochanowski that utilized information from three confidential informants. First, the affidavit stated that in December 2006, under the direction of law enforcement, CI-06-X

made a controlled purchase of approximately one-quarter ounce of crack cocaine from Abercrombie at the Needham Street residence. The informant arranged to purchase narcotics from Lawson, but Lawson told him "to do the buy off [Abercrombie.]" Second, the affidavit averred that, on June 30, 2007, under the direction of law enforcement, CI-06-O made a controlled purchase of approximately one-quarter ounce of crack cocaine from Lawson and Jeremy Bryant at 710 W. 9th Street in East Liverpool, Ohio. Third, the affidavit provided that, on January 15, 2008, CI-07-L informed the police that she previously had purchased up to four one-half ounce quantities of crack cocaine from Lawson at the Needham Street residence. The affidavit also described the third informant's most recent attempt to arrange a controlled purchase. CI-07-L called Lawson to see "if she could come thru [sic] to see him," which the police interpreted to mean purchase crack cocaine, and Lawson told her to call back in an hour. An hour later, Lawson told her to meet him in fifteen minutes at "the playground," which the informant told the affiant is Lawson's code word for the Needham Street residence. The police chose not to have CI-07-L complete the narcotics purchase that day, but did record and monitor both of these conversations. Two days later, CI-07-L placed another consensually monitored and recorded telephone call to Lawson and asked if "he was still good," to which he replied that he "was still good." Officers interpreted this statement to mean that Lawson still had crack cocaine available to sell.

The affidavit further states that all three informants were considered reliable based on corroboration through surveillance and independent investigation. Additionally, each informant previously had successfully cooperated with the police: CI-06-X provided information leading to one controlled purchase; CI-06-O provided information leading to multiple arrests, one search warrant,

and multiple controlled purchases; and CI-07-L provided information leading to one arrest and multiple controlled purchases.

On February 27, 2008, Lawson was indicted in the Northern District of Ohio for a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) for possession with intent to distribute fifty grams or more of crack cocaine, a violation of 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm, and a violation of 18 U.S.C. § 924(c)(1)(A)(i) for carrying a firearm in the commission of drug trafficking. Lawson filed a motion to suppress the evidence uncovered during the search of the Needham Street residence, arguing that the warrant was not supported by probable cause and requesting an evidentiary hearing. The district court denied the motion without an evidentiary hearing, and trial began on August 3, 2010. Two days later, the jury convicted Lawson on all three counts.

Lawson filed motions for judgment of acquittal on all three convictions and a motion for a new trial based on allegedly improper statements by the prosecutor during closing arguments. The district court granted Lawson's motion for judgment of acquittal on count two, the use of a firearm during a drug trafficking offense, and dismissed that charge. The court denied his request for a new trial and the other motions for judgment of acquittal. On October 6, 2010, Lawson was sentenced to life imprisonment on the possession with intent to distribute charge and 120 months on the felon in possession of a firearm conviction, with ten years of supervised release following each sentence. Lawson filed a timely notice of appeal.

II. ANALYSIS

*A. Motion to Suppress*

Lawson alleges that the magistrate judge improperly granted a search warrant for the Needham Street residence, and that the district court erred in denying his motion to suppress the results of this allegedly improper search. The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." and demands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV. To satisfy probable cause, a search warrant must show "a fair probability that contraband or evidence of a crime will be found in a particular place," *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998), and must establish "a nexus between the place to be searched and the evidence sought," *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). To do so, police may rely on information from confidential informants, if "sufficiently detailed and corroborated by the independent investigation of law enforcement officers." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998).

When a magistrate judge finds probable cause and issues a search warrant, the district court affords "great deference . . . and should only revers[e that decision] if arbitrarily made." *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003);*United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (second and third alterations in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960) (abrogated on other grounds)). We review the district court's denial of a motion to suppress de novo

for its conclusions of law and for clear error in its findings of fact. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). We must view the evidence in the light most favorable to the government and "most likely to support the decision of the district court." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005); *see United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008).

Lawson maintains that the search warrant was improperly issued because it failed to establish a connection between Lawson and the Needham Street residence. We, however, conclude that the district court correctly determined that the magistrate judge had a "substantial basis for concluding that a search would uncover evidence of wrongdoing at the Needham Street residence." *United States v. Lawson*, No. 4:08CR1-02 (N.D. Ohio Apr. 7, 2010). In issuing the search warrant, the magistrate judge considered information from three reliable confidential informants connecting Lawson to drug dealing and the Needham Street residence. The first informant provided evidence suggesting that Lawson was using the Needham Street residence to engage in drug dealing through his statement that he made a controlled purchase of crack cocaine at the Needham Street residence from Abercrombie, at Lawson's direction. The information from the second informant regarding his controlled purchase from Lawson reaffirmed this suspicion that Lawson was selling crack cocaine. And finally, the third informant directly connected Lawson to the house—she had purchased four one-half ounce quantities of crack cocaine from Lawson at that address as well as arranged for a future controlled purchase from him at the same place just days before the warrant was issued.

Lawson alleges that because the first two informants provided information from 2006 and 2007, respectively, the warrant was based on stale information. Although those facts alone likely

would have been too stale to support a warrant in January 2008, they must be considered in light of all the evidence before the magistrate judge and must be read in conjunction with the third informant's more current information. The information the third informant provided occurred in the three days leading up to the search. Considering all three confidential informants' statements together, it is clear that there is a substantial basis to believe that Lawson kept and sold drugs from that residence. *See United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) ("Evidence of ongoing criminal activity will generally defeat a claim of staleness.").

Lawson wrongly argues that the district court erred in its conclusion that the magistrate judge had a substantial basis to find probable cause to search the Needham Street residence for evidence of Lawson's illegal drug activities. Although it is true that a warrant requires probable cause, including a sufficient nexus between the place to be search and contraband sought, that standard "is described as a fair probability—not an absolute certainty . . . ." *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008). And, as we have noted, law enforcement may rely on information from confidential informants, if reliable. *See Lumpkin*, 159 F.3d at 986. Where "an informant has a proven track record for providing reliable information, corroboration of the information he provides is not necessarily essential, as long as there is sufficient indication of his basis of knowledge for concluding that contraband or evidence of a crime will be found in a particular place." *United States v. Smith*, 182 F.3d 473, 479 (6th Cir. 1999). Reliable informants, all of whom the officers worked with on previous occasions, supplied information establishing Lawson's continued presence at and selling of drugs from the Needham Street residence. Given these facts and the appropriate deference

given to the magistrate judge's determination, the district court did not err in its conclusion that a

substantial basis existed for concluding that Lawson sold drugs from the Needham Street residence.[1]

Lawson further submits that the district court erred in denying his request for an evidentiary

hearing on his motion to suppress. We review this decision for an abuse of discretion. *United States*

*v. McGhee*, 161 F. App'x 441, 443 (6th Cir. 2005); *see United States v. Lewis*, 40 F.3d 1325, 1332

(1st Cir. 1994). A litigant is not always entitled to an evidentiary hearing, especially when the

moving party presents arguments that are "entirely legal in nature." *See United States v. Abboud*,

438 F.3d 554, 577 (6th Cir. 2006). "[A] defendant must make at least some initial showing of

contested facts to be entitled to such a hearing." *United States v. Giacalone*, 853 F.2d 470, 483 (6th

Cir. 1988); *McGhee*, 161 F. App'x at 444. Lawson's motion, contending that the warrant was based

on stale information insufficient to amount to probable cause, set forth purely legal questions. As

in *Abboud*, Lawson "argued that the facts were insufficient to support probable cause" and that there

was insufficient corroboration, both of which "contest[] a legal conclusion." 438 F.3d at 577.

Similarly, he "argued that the probable cause was stale[, which] too was a challenge to a legal

conclusion." *Id.* Finally, Lawson challenged *Leon*'s applicability to the case, which is also a pure

legal question.[2] The issues before that court at the time of its denial were all purely legal questions

---

[1]Even if the magistrate judge had erred, Lawson's motion to suppress would still be properly denied under the *Leon* good faith exception, as there are no allegations of bad faith, nor was the warrant so facially deficient or lacking in probable cause that the officers were unreasonable in relying on it. *United States v. Leon*, 468 U.S. 897, 922 (1984); *see also Herring v. United States*, 555 U.S. 135, 140 (2009).

[2]It was not until his appellate brief that Lawson challenged the credibility of the confidential informants. This credibility question, therefore, was not before the district court when it denied

and, therefore, we do not find that the district court abused its discretion in denying Lawson's request.

*B. Motion for Judgment of Acquittal*

Lawson appeals the district court's denial of his motion for judgment of acquittal on his conviction for possession with intent to distribute fifty or more grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). He contends that the evidence presented at trial did not prove the essential elements of this crime—that he knowingly possessed a controlled substance with intent to distribute. *See United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006). We review a district court's denial of a motion for judgment of acquittal de novo. *United States v. McGee*, 529 F.3d 691, 696 (6th Cir. 2008). In reviewing the motion, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted); *see United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003). We may "not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003) (quoting *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 588-89 (6th Cir. 1999)). Rather, we must give "the government the benefit of all inferences that could reasonably be drawn from the testimony," *id.* (emphasis omitted), and resolve all credibility issues in favor of the jury's verdict. *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

---

Lawson's request for an evidentiary hearing.

The question before us is whether any rational trier of fact could have found that the government proved Lawson knowingly possessed fifty or more grams of crack cocaine with the intent to distribute it. The prosecution may show possession of a controlled substance through either actual or constructive possession. *See United States v. Welch*, 97 F.3d 142, 150 (6th Cir. 1996). Constructive possession may be established through circumstantial evidence that "support[s] a jury finding that defendant knowingly ha[d] the power and the intention at a given time to exercise dominion and control over the crack cocaine." *Id.* (internal citation and quotation marks omitted); *see United States v. Reed*, 141 F.3d 644, 651 (6th Cir. 1998). In this case, Lawson's proximity to the large quantity of drugs found at the residence is, by itself, insufficient to establish constructive possession. *See Welch*, 97 F.3d at 150. The prosecution, however, presented evidence establishing his control over the drugs. This evidence included: Lawson's ability to direct officers to the contraband hidden near the microwave, suggesting that Lawson knew exactly where drugs were hidden in the house; his admission that his fingerprints might be on the bags of cocaine found above the bedroom ceiling; and his admission that he might have additional drugs hidden in his clothing, which suggests access to the drugs. Viewing these facts in the light most favorable to the government, we find that a rational trier of fact could find beyond a reasonable doubt that Lawson knowingly exercised control over the crack cocaine seized at the home. *See Jackson*, 443 U.S. at 319.

To prove an intent to distribute, the prosecution can rely on "the inferences drawn from . . . the quantity of the [controlled substance] involved, the estimated street value . . . and other evidence which would support the inference that the [controlled substance] was not intended to be

used for personal use." *United States v. Vincent*, 20 F.3d 229, 233 (6th Cir. 1994) (citations omitted); *see Salgado*, 250 F.3d at 447 ("An intent to distribute the cocaine may be inferred from the large quantity . . . of the cocaine."). The evidence showed that Lawson had 181.3 grams of crack cocaine hidden in the bedroom as well as smaller bags containing roughly five grams stashed in the kitchen—an amount wholly inconsistent with personal use. *See, e.g.*, *United States v. Burgess*, 209 F. App'x 497, 500 (6th Cir. 2006) (per curiam); *United States v. Green*, 157 F. App'x 853, 855 (6th Cir. 2005). Additionally, Lawson possessed a large amount of cash, as evidenced by the $7,000 police found above the bedroom ceiling tiles and the $1,090 in his jacket. A rational juror could reasonably construe these facts to find beyond a reasonable doubt that Lawson intended to distribute drugs. Therefore, the prosecution sufficiently established the essential elements of possession with intent to distribute fifty or more grams of crack cocaine, and the district court properly denied Lawson's motion for judgment of acquittal on this conviction.

*C. Motion for New Trial*

Lawson appeals the district court's denial of his motion for a new trial based on the allegedly improper statements the prosecutor made during closing argument. During rebuttal, the prosecutor said: "I would submit to you, ladies and gentlemen of the jury, that if this wasn't your crack, and if this wasn't your gun, and if this wasn't your ammunition, would you not have said, 'Where did that come from? Not mine'?" Although defense counsel objected and the district court gave a general curative instruction, after the conclusion of the trial, Lawson filed a motion for a new trial, alleging that the prosecutor's statement improperly commented on his pre-arrest silence, in violation of his

Fifth Amendment right to remain silent. We review a district court's decision to deny a motion for a new trial for abuse of discretion. *United States v. Wettstain*, 618 F.3d 577, 590 (6th Cir. 2010).

A prosecutor may not comment on a defendant's pre-arrest or post-arrest silence as substantive evidence of his guilt of the crime. *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *see also Jaradat v. Williams*, 591 F.3d 863, 867 (6th Cir. 2010) (extending *Doyle* to prosecutor's statements during closing argument). "[T]he use . . . of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle*, 426 U.S. at 619. The *Doyle* rule does not, however, apply to the prosecutor's statements when the defendant waived his right to silence after being read the *Miranda* warnings. *United States v. Crowder*, 719 F.2d 166, 172 (6th Cir. 1983) (en banc) ("[T]he *Doyle* rule has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the *Miranda* warnings.").

In any event, *Doyle* does not apply here because Lawson waived his right to remain silent. When officers brought Lawson downstairs to the kitchen, he received and acknowledged his *Miranda* warnings. The officers then proceeded to ask whether he kept drugs or weapons in the house, if the drugs found in the bedroom were his, and if his fingerprints were on the bags of crack cocaine. Lawson answered all but one of these questions. Because Lawson responded to police questioning, he did not invoke his right to remain silent. *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010) (requiring a defendant to unambiguously invoke his right to remain silent). Therefore, because the prosecutor's statement did not concern Lawson's silence after invoking his

right to remain silent and does not run afoul of *Doyle*, the district court properly denied Lawson's

motion for a new trial.

## III.  CONCLUSION

The district court's denials of the defendant's motion to suppress, motions for judgment of

acquittal, and motion for a new trial are AFFIRMED.