**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0223n.06

No. 18-5724

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 29, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| WILLIAM J. HAMPTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | | |

**Before: GUY, CLAY, and GRIFFIN, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** William Hampton was arrested after fleeing a traffic stop in a car from which police would seize seven packages of methamphetamine, a loaded firearm, ammunition, hundreds of small baggies, and a digital scale. A jury convicted Hampton of one count of possession with intent to distribute 50 grams or more of methamphetamine and two firearm offenses. Hampton challenges the sufficiency of the evidence to establish his intent to distribute the methamphetamine and argues that he was entitled to a lesser-included-offense instruction for simple possession. We affirm.

**I.**

On the night of his arrest, Hampton was driving his mother's car, which had a flat tire and inoperable tail lights, with his girlfriend and one-year-old daughter as passengers. Garrand

County Police Officer Eric Taylor stopped Hampton because the tail lights were out, and then followed Hampton to a nearby station where he could put air in the tire. When asked, Hampton said he did not have his driver's license or any other identification and gave someone else's name. The misidentification became apparent to Officer Taylor after he used the terminal in a fellow officer's vehicle to check for driver's license information. As Officer Taylor approached with this information, Hampton restarted the car, ignored instructions to turn it off, and drove away. A chase ensued for several miles despite the flat tire—including a stretch where Hampton drove southbound in the northbound lanes of U.S. Route 27—and ended when a police maneuver caused Hampton to drive down an embankment and into some brush and trees.

Hampton, who was the first to get out of the car, was taken into custody and transported for medical attention. His girlfriend got out of the car as well, and Officer Taylor removed the uninjured child from her car seat. Officer Taylor discovered (and photographed) a loaded .40 caliber pistol on the passenger seat next to a small plastic baggie containing what appeared to be methamphetamine. The car was transported to a storage facility, where it was later searched pursuant to a warrant. A black backpack found on the floorboard of the front passenger seat contained six more bags of methamphetamine. Officers also discovered ammunition for a .40 caliber pistol, several hundred small empty baggies, and a digital scale concealed in a trunk cavity. In all, 128 grams—just over 4.5 ounces—of methamphetamine were seized from the car. A "hit" was described to be a quarter of a gram, while a very heavy user might use five or six grams in a day.

When interviewed at the hospital, Hampton appeared to be under the influence of drugs; acknowledged that he had several ounces of methamphetamine in the car; said he fled because he was afraid of being arrested for the methamphetamine; and deflected questions about

the firearm by suggesting it must have been a toy BB gun belonging to his son.  During a later interview with ATF Special Agent James Freeman, Hampton said he was only using drugs, but then also claimed to have arranged to get eight ounces of methamphetamine in a trade for property that was owned by his mother.  Defendant's mother learned that her son had traded a house she owned and kicked out the people that she found were staying there.  She also testified that she did not see her son with much money in the weeks and months before his arrest, and added that she had to buy food, diapers, and other things for him and his children.  Finally, defendant's mother testified that she, her son, her son's two girlfriends, and employees of the repair shop all had access to her car.

The district court denied Hampton's motion for judgment of acquittal, as well as his request for a lesser-included-offense instruction.  An instruction was added, however, explaining that the defense theory was "that the methamphetamine found in the car was not for distribution" and instructing the jury to acquit the defendant if the government "failed to prove beyond a reasonable doubt that the Defendant intended to distribute the methamphetamine."  The jury found Hampton guilty of possession with intent to distribute 50 grams or more of a mixture containing methamphetamine, possession of a firearm in furtherance of the drug trafficking crime, and of being a felon in possession of a firearm.  *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. §§ 924(c)(1)(A), 922(g)(1).  The district court denied Hampton's motions for judgment of acquittal and a new trial, and sentenced Hampton to a total of 180 months of imprisonment.  This appeal followed.

## II.

Reviewing the denial of a motion for judgment of acquittal, this court views the evidence in the light most favorable to the government and asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Humphrey*, 279 F.3d 372, 378 (6th

Cir. 2002).  In evaluating the evidence, we "must draw all reasonable inferences from the record

in favor of the prosecution and must avoid the temptation to weigh the evidence anew or assess

the credibility of witnesses."  *United States v. Fitzgerald*, 906 F.3d 437, 449 (6th Cir. 2018).

Hampton challenges the sufficiency of the evidence to support the conviction for possession with

intent to distribute methamphetamine.

To convict, the government was required to prove that Hampton (1) knowingly or

intentionally (2) possessed a controlled substance (3) with intent to distribute.  *See United States*

*v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006); *United States v. Monger*, 185 F.3d 574, 576 n.2 (6th

Cir. 1999).  Without disputing that he knowingly possessed the methamphetamine, Hampton

argues that the evidence was not sufficient to establish that he intended to distribute it.  Intent to

distribute a controlled substance may be established by direct or circumstantial evidence that

would support an inference that the controlled substance was not intended for personal use.  *See*

*United States v. Vincent*, 20 F.3d 229, 232-33 (6th Cir. 1994); *see also United States v. Lawson*,

476 F. App'x 644, 650 (6th Cir. 2012).

Although there was evidence that Hampton may have been a user, Officer Taylor and

Agent Freeman testified that the quantity and value of the methamphetamine found in the car

Hampton was driving indicated trafficking activity and well exceeded an amount that would be

consistent with personal use.  Indeed, although the small baggie found on the seat only contained

about one gram of methamphetamine, the black backpack found on the front passenger floorboard

held six separate bags that each contained between 18 and 26 grams of methamphetamine.  The

quantity of methamphetamine seized was estimated to have a street value of between $4,800 and

$12,800.  The reasonable inference that Hampton intended to distribute at least 50 grams of the

methamphetamine was not negated by evidence that it was not tested for purity. Agent Freeman explained that although usage can vary with purity, dealers are careful not to weaken drugs too much by adding fillers or they can lose their customers. There was also testimony that the separate packaging, the proximity of the loaded firearm, and the concealed baggies and digital scale were indicative of distribution. Finally, even if Hampton did not have exclusive access to his mother's car, he was driving it while transporting more than four ounces of methamphetamine with a loaded firearm and tools to package it for distribution.

Viewed in the light most favorable to the government, the evidence was sufficient to lead a rational trier of fact to conclude, beyond a reasonable doubt, that Hampton possessed with intent to distribute 50 grams or more of methamphetamine.

**III.**

The district court denied Hampton's motion for a new trial, which argued that it was error to refuse to give an instruction on the lesser included offense of possession of methamphetamine. This court reviews the denial of such a request for abuse of discretion. *See Monger*, 185 F.3d at 576. A lesser-included-offense instruction should be given when:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.

*Id*. Here, a proper request was made; the evidence would support a conviction for possession of the methamphetamine; and it is settled that possession of a controlled substance is a lesser-included offense of possession with intent to distribute a controlled substance. *Id*. However, the district court found that the last requirement was not met because proof of intent to distribute was not sufficiently disputed. We agree.

That determination must be made without weighing the evidence and by asking whether "the evidence would allow a rational jury to convict him of the lesser offense and acquit him of the greater." *Id*. at 577 (citing *Keeble v. United States*, 412 U.S. 205, 208 (1973)). Hampton argues that this case is like *Monger*, which held that the defendant was entitled to a simple-possession instruction because the element that differentiated the two crimes—intent to distribute—was sufficiently disputed that a jury could consistently acquit of the greater offense and convict on the lesser. *See id*. At first blush, there are similarities to *Monger*, where the evidence included cash, drugs, a cell phone, digital scales, and sandwich baggies with torn corners. *Id*. Arrested after a traffic stop, Monger had $2,512 in cash and 10.66 grams of cocaine base on his person and a total of about 9 grams of marijuana was concealed in the car. *Id*. at 575-76. Importantly, however, there was testimony that this quantity of drugs could have been possessed for personal use or for distribution. *Id*. at 577. In addition, the digital scales were found in an apartment that Monger shared with others and the torn baggies were recovered from a community dumpster—not the car he was driving. *Id*. In contrast, Hampton was driving the car in which police found the separately packaged distribution quantity of methamphetamine, a loaded firearm, and the digital scales and small empty baggies.

Nor is this case like *United States v. LaPointe*, 690 F.3d 434, 442-43 (6th Cir. 2012), in which the defendant was charged with conspiracy to possess with intent to distribute oxycodone but requested a lesser-included-offense instruction for conspiracy to possess oxycodone. LaPointe, who often purchased pills multiple times a day, claimed he took large quantities of oxycodone for severe pain. *Id*. at 438. As is relevant here, although LaPointe's co-conspirators intended for him to distribute the oxycodone, LaPointe testified that he had tricked them into fronting him the oxycodone on credit to feed his own addiction. *Id*. at 443. Here, however, there was no

comparable evidence that Hampton possessed the methamphetamine without intending to distribute it.

We agree with the district court that this case is more akin to *Talley v. United States*, 573 F. App'x 410, 413-14 (6th Cir. 2014), which held (in the context of a motion to vacate or set aside sentence) that Talley was not entitled to a lesser-included-instruction for simple possession of cocaine base. Talley was stopped while driving a car in which he had "a set of digital scales, a loaded firearm, seven individually wrapped bags of cocaine base, additional small plastic bags, and $177 in cash." *Id*. at 413. Talley testified that he possessed the cocaine base for personal use, but this court concluded that the evidence found together constituted "powerful circumstantial evidence of intent to distribute." *Id*. Distinguishing *Monger*, this court found that the evidence could not lead a reasonable jury to consistently convict him of possession and acquit him of possession with intent to distribute the cocaine base. *Id*.

Hampton contends that the element of intent to distribute was sufficiently disputed in this case because there was evidence that he was a user and that others had access to his mother's car. But, as in *Talley*, there was strong circumstantial evidence of Hampton's intent to distribute 50 or more grams of methamphetamine. There was testimony that 128 grams of methamphetamine was a distribution quantity and that the separate packaging, proximity to the loaded firearm, and presence of the small baggies and digital scale were also indicative of distribution. Nor was there evidence suggesting that Hampton would have had the money to purchase that much methamphetamine for his own use. We agree with the district court that the evidence of intent to distribute was not sufficiently disputed so that a rational jury could consistently acquit him of possession with intent to distribute and convict him of simple possession of methamphetamine. Moreover, the district court heeded our observation in *Talley* that the need for a lesser-included-

offense instruction may be diminished by including the defense theory and expressly instructing the jury that it must acquit if the government failed to prove beyond a reasonable doubt that the defendant intended to distribute the methamphetamine. The district court did not abuse its discretion in denying Hampton's motion for new trial.

*            *            *

Accordingly, the judgment is **AFFIRMED**.