No. 04-3005
File Name: 05a0798n.06
Filed: September 21, 2005

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE NORTHERN |
| SIDDIQ ABDUL HAMID, | ) DISTRICT OF OHIO |
| | ) |
| Defendant-Appellant. | ) |

Before:     **NELSON** and **SUTTON**, Circuit Judges, and **ZATKOFF**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  This is an appeal from a judgment of conviction and sentence in a criminal case.  The defendant challenges his convictions on grounds of insufficiency of the evidence, erroneous exclusion of testimony, and ineffective assistance of counsel.  He challenges his sentence on the ground that his classification as a "career offender" under the United States Sentencing Guidelines was both incorrect and unconstitutional.  For the reasons set forth below, we shall affirm the defendant's convictions but vacate his sentence and remand the case for re-sentencing.

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

I

The defendant, Siddiq Abdul Hamid (a/k/a Andre Lindsay), was a member of a group identified in his brief as the Black Stone Rangers Street Gang. In May of 2002 Mr. Hamid and other Black Stone Rangers made plans to rob a man whom they thought would have large quantities of cocaine, marijuana, and cash. Armed with a sawed-off shotgun and several handguns, the would-be robbers drove in two cars to the house of the intended victim. He was not at home, and the robbery never took place.

On their way back from the aborted robbery, Mr. Hamid and his associates were noticed by a Cleveland, Ohio, police officer who "observed two autos driving erratically in and out of traffic at a high rate of speed." The officer, Joseph Sedlak, saw that the occupants of the cars were all dressed in black. His suspicions aroused, Officer Sedlak stopped one of the vehicles, a Plymouth driven by Mr. Hamid. The Plymouth sped away when the officer got out of his cruiser. A chase ensued. The occupants of the Plymouth eventually abandoned their vehicle and escaped on foot, but one of them was apprehended later that night, as were the three occupants of the second car. Mr. Hamid was arrested subsequently and was identified as the driver of the Plymouth.

A federal grand jury charged Mr. Hamid and four alleged co-defendants with conspiracy to possess cocaine and marijuana with intent to distribute the drugs, carrying firearms during and in relation to a drug trafficking crime, and possession of an unregistered sawed-off shotgun. Hamid was also charged with being a convicted felon in possession of

firearms.  A jury found him guilty on all counts.  The jury specifically found that the drug conspiracy of which Hamid was a part involved 500 or more grams of cocaine.

Mr. Hamid was classified as a "career offender" under § 4B1.1 of the sentencing guidelines.  This classification, coupled with statutory minimum sentence provisions, resulted in a guideline sentence range of imprisonment for 382 to 447 months.  The district court expressed the view that the guideline range was "grossly disproportionate" to the crimes, but held that a downward departure was not warranted.  Mr. Hamid was sentenced to 382 months, and he has perfected a timely appeal.

## II

Mr. Hamid claims first that his convictions for conspiracy and carrying firearms during a drug trafficking crime are not supported by sufficient evidence.  Our task is to decide whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

## A

The "essential elements" of a drug conspiracy are "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy."  *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir.) (internal quotation marks

omitted), *cert. denied*, 528 U.S. 1051 (1999).  Mr. Hamid acknowledges that the evidence was sufficient to establish his knowing participation in a conspiracy.  He maintains, however, that the object of the conspiracy was not shown to extend beyond armed robbery.

We disagree.  Two of Mr. Hamid's co-conspirators testified that the group planned to sell the cocaine and marijuana that they hoped to obtain in the robbery.  On the strength of that evidence, a reasonable jury could find that a purpose of the conspiracy was to possess controlled substances with the intent to distribute them — a violation of 21 U.S.C. § 841(a).

B

The elements of a violation of 18 U.S.C. § 924(c) are:  (1) carrying or use of a firearm (2) during and in relation to a drug trafficking crime.  See *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir.), *cert. denied*, 526 U.S. 1151 (1999).  "A defendant carries a firearm when he conveys or moves the firearm, including via a vehicle, and when there is 'personal agency and some degree of possession' over the firearm."  *Gibbs*, 182 F.3d at 426 (quoting *Muscarello v. United States*, 524 U.S. 125, 134 (1998)).  The "during and in relation to" element is satisfied where "the firearm furthered the purpose or effect of the [drug trafficking] crime" and "its presence or involvement was not the result of coincidence." *Gibbs, id.*

There was substantial evidence that Mr. Hamid had a .45-caliber handgun on his person when he was at the house of the intended victim and that a sawed-off shotgun was in

the Plymouth while Hamid was driving the vehicle. (Mr. Hamid does not challenge the sufficiency of this evidence to establish the first element of a § 924(c) violation.) There was also evidence that the firearms furthered the purpose of a drug trafficking crime. The conspiracy in which Mr. Hamid participated was plainly a "drug trafficking crime" within the meaning of § 924(c). See 18 U.S.C. § 924(c)(2) (defining "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.) . . ."); 21 U.S.C. §§ 841(b)(1)(B) and 846 (providing that conspiracy to possess 500 grams or more of cocaine with intent to distribute it is punishable by imprisonment for a minimum of five years). As we have seen, a rational jury could find that one purpose of the conspiracy was to obtain and sell controlled substances. And there was testimony that the conspirators' firearms were intended to assist in that endeavor. In the words of one conspirator, the plan "was to bring guns . . . so that we could obtain the stuff without no confrontations." The jury was thus justified in finding that both elements of the § 924(c) crime had been established.

III

Mr. Hamid's next argument is that the district court abused its discretion by not allowing testimony as to whether one of the co-conspirators was an informant for the Federal Bureau of Investigation and, if so, whether that conspirator received favorable treatment from the government. We see no abuse of discretion in this respect.

"The Supreme Court has recognized the government's privilege not to reveal the identity of persons who furnish information regarding violations of the law." *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993) (citing *Roviaro v. United States*, 353 U.S. 53 (1957)), *cert. denied*, 511 U.S. 1034 (1994). The privilege is not absolute, however. "Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60-61.

Here, as we see it, evidence that one of Mr. Hamid's co-conspirators was an informant for the FBI would not have been particularly relevant or helpful to Hamid's defense. Such evidence was certainly not essential to a fair determination of the case. The conspirator in question, William Wilson, did not testify, so his status as an informant (and a recipient, perhaps, of favorable treatment) could not have been used for impeachment purposes. We are hard-pressed to see how Mr. Wilson's status could have been probative of Mr. Hamid's guilt or innocence. Hamid suggests only that Wilson "may have been a critical witness for the defense" and "would have shed light on the true intent of the conspirators." But the defense was free to call Mr. Wilson as a witness and to question him about the conspirators' intent without disclosing that Wilson might have been a government informant. In short, Mr. Hamid has not persuaded us that his defense was prejudiced by the challenged evidentiary rulings.

IV

Mr. Hamid claims next that the assistance rendered by his trial counsel was ineffective. We normally decline to consider ineffective assistance claims on direct appeal, preferring to let the factual bases for such claims be developed in connection with a motion brought under 28 U.S.C. § 2255. See *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004). We are not persuaded that a departure from that general rule is warranted in the case at bar.

V

Finally, Mr. Hamid challenges his sentence on the grounds that he was erroneously classified as a "career offender" under U.S.S.G. § 4B1.1 and that a jury, not the district court, should have determined whether the classification was proper.

Under U.S.S.G. § 4B1.1, a defendant is a career offender if (1) he was at least 18 years old at the time of the offense of conviction, (2) the offense of conviction is a felony and either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a) (2002). Mr. Hamid does not dispute that the first two criteria are met here. His argument is that his two prior felony convictions were "related cases" within the meaning of U.S.S.G. § 4A1.2 and could not, therefore, be counted separately for purposes of § 4B1.1.

"The provisions of § 4A1.2 . . . are applicable to the counting of convictions under § 4B1.1." U.S.S.G. § 4B1.2, comment. (n.3) (2002). Accordingly, convictions in "related cases" must be counted as a single conviction for purposes of the career-offender determination. See *id.* § 4A1.2(a)(2). "Related cases" involve offenses that "occurred on the same occasion, . . . were part of a single common scheme or plan, or . . . were consolidated for trial or sentencing." *Id.* § 4A1.2, comment. (n.3).

Mr. Hamid's prior felony convictions were for possession of cocaine and criminal tools on August 26, 1993, and felonious assault on April 14, 1993. (JA 551-552.) These offenses occurred on different occasions, obviously, and were not part of a common scheme or plan. Hamid entered his pleas in the two cases on the same day and received his sentences on the same day, but the district court found that the scheduling was a matter of convenience and not a result of consolidation. That finding is not clearly erroneous. Mr. Hamid's prior convictions thus were not in "related cases," and he was correctly classified as a career offender.

Citing *Blakely v. Washington*, 124 S. Ct. 2531 (2004), Mr. Hamid argues that the Sixth Amendment required that a jury, rather than the district court, decide whether he is a career offender. The argument is unavailing. As the Supreme Court said in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and reiterated in both *Blakely*, 124 S. Ct. at 2536, and *United States v. Booker*, 125 S. Ct. 738, 756 (2005), prior convictions are excepted from the rule requiring jury determination of disputed facts that enhance a defendant's sentence

beyond the maximum that would otherwise apply. It follows from this that career offender status need not be determined by a jury. See *United States v. Bradley*, 400 F.3d 459, 462-63 (6th Cir.) (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)), *petition for cert. filed*, No. 04-10620 (June 9, 2005).[1]

The absence of a Sixth Amendment violation does not mean, however, that re-sentencing is unnecessary. Under *Booker*, the sentencing guidelines must be treated as advisory rather than mandatory. See *Booker*, 125 S. Ct. at 767. In the case at bar the district judge made it clear that (1) he understood the guidelines to be mandatory, and (2) he probably would have imposed a more lenient sentence had the guidelines allowed him to do so. In these circumstances we must remand the case for re-sentencing. See *United States v. Barnett*, 398 F.3d 516, 525-30 (6th Cir.), *petition for cert. filed*, No. 04-1690 (June 16, 2005).

Mr. Hamid's convictions are **AFFIRMED**, his sentence is **VACATED**, and the case is **REMANDED** for re-sentencing.

---

[1]Mr. Hamid also argues that it was improper for the district court to determine that 3000 grams of cocaine were involved in the drug conspiracy when the jury had found only that 500 grams or more were involved. But the district court's determination did not violate the rule of *Apprendi*, *Blakely*, and *Booker,* given that the determination did not affect Hamid's sentence. Attribution of 3000 grams rather than 500 grams of cocaine to Mr. Hamid caused his base offense level to be set at 28 rather than 26 under U.S.S.G. § 2D1.1(c) (2002). Hamid's classification as a career offender caused an adjustment of his offense level to 34, however, and this adjustment would have applied regardless of whether the base offense level was 26 or 28. See U.S.S.G. § 4B1.1(b).