**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0951n.06**
**Filed: December 6, 2005**

**No. 04-1332**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| JERMAINE ANTHONY MCGHEE, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

**BEFORE: BOGGS, Chief Judge; NORRIS and COOK, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Defendant Jermaine McGhee appeals from a jury verdict convicting him of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846, possession with intent to distribute an unspecified amount of marijuana in violation of 21 U.S.C. § 841, and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On appeal, defendant contends that the district court erred in 1) denying his request for an evidentiary hearing to determine the legality of a trash search; 2) refusing to admit at trial post-arrest and plea hearing statements made by his girlfriend, Kenyatta Manuel; 3) denying his motion for acquittal based upon the sufficiency of the evidence; 4) denying his motion to suppress post-arrest, self-incriminating statements allegedly made after he requested counsel; 5) overruling his objections to certain sentencing enhancements; and 6) applying sentencing enhancements that violate his Sixth

Amendment rights as established in *United States v. Booker*, 125 S. Ct. 738 (2005). We affirm his

convictions but remand for resentencing.

I.

In late 2002, the Grand Rapids, Michigan police obtained a search warrant for defendant's

house based upon two considerations: 1) an informant's tip that a black male was selling drugs from

the residence; and 2) two trash searches that uncovered bags containing trace amounts of marijuana

and cocaine. After surveillance of the house, Manuel was arrested while driving away. A search

incident to arrest led to the discovery of marijuana and one thousand dollars. Manuel told the police

that defendant was at home and had firearms there. Police coaxed McGhee out of the house and

arrested him. A subsequent search turned up one-half pound of marijuana separated in plastic

sandwich baggies, jars containing cocaine residue, ten thousand dollars in cash, two police scanners,

a digital scale, a night vision scope, expensive jewelry, receipts for purchases, pay stubs showing

defendant's low income, and three loaded firearms. Officers also recovered a home-made videotape

of McGhee displaying jewelry, marijuana, and a new Cadillac.

II.

A. *Denial of Evidentiary Hearing*

Defendant contends that the district court erred in denying his request for an evidentiary

hearing to allow him an opportunity to demonstrate that the first of two trash searches was

unconstitutional and that hence there was no probable cause for the search warrant. The affidavits

in support of the search warrant stated that the two trash searches occurred on January 22 and

January 30, 2003. A Property Receipt and Lab Request submitted by the government were also

dated January 22. The government stipulated that trash in defendant's neighborhood was picked up on Thursdays, which would be January 23, rather than January 22, in 2003. Thus, defendant questioned whether the trash was illegally seized from his property rather than from the public curb.

The district court denied an evidentiary hearing for two reasons: 1) the government "conceded" at the hearing on defendant's motion that it had made typographical errors and that the trash had actually been seized on January 23; and 2) defendant failed to submit an affidavit in support of his motion and did not plan to testify. On appeal, defendant argues that the government should not have been permitted to "concede" away a contested issue of fact. He contends that he alleged sufficient facts to warrant an evidentiary hearing -- the conflicting dates offered by the government for the first trash search, and the statement of "belief" in his memorandum that it was his household routine to set trash out on the morning scheduled for pick-up.

A district court's decision whether to hold an evidentiary hearing on a motion to suppress is reviewed for abuse of discretion. *United States v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994); *see generally United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (standard of review for denial of evidentiary hearing is abuse of discretion) (citing *Alley v. Bell,* 307 F.3d 380, 389 (6th Cir. 2002)). A defendant must make some initial showing of contested facts before he is entitled to an evidentiary hearing. *United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988). Evidentiary hearings on motions to suppress should be granted "when the defendant alleges sufficient facts which if proven would justify relief." *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998) (citing *United States v. Woods*, 995 F.2d 713, 715 (7th Cir. 1993)).

Defendant failed to make a sufficient initial showing of contested facts that, if proven, would warrant relief. In *California v. Greenwood*, 486 U.S. 35, 40-41 (1988), the Supreme Court noted that there is no reasonable expectation of privacy in trash left at the curb. Accordingly, under the circumstances of this case, defendant was obliged to offer evidence suggesting that investigators did not seize his trash from the public curb. His argument concerning the conflicting trash pick-up dates provided by the government for the first trash search was not sufficient to raise a material factual dispute. Even if it were to be assumed that the trash was seized on January 22, defendant failed to proffer any evidence that the trash was not at the curb on that date.

In the alternative, the district court was not required to grant an evidentiary hearing because probable cause for the search warrant existed based upon the second trash search, which occurred on Thursday, January 30. *Franks v. Delaware*, 438 U.S. 154, 156 (1978) (evidentiary hearing may be denied where probable cause exists even without the controverted evidence); *United States v. Jenkins*, 728 F.2d 396, 397 (6th Cir. 1984); Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). On appeal, defendant does not dispute the legality of the second trash search, which yielded baggies of cocaine and marijuana residue. Accordingly, evidence from the second trash search, in conjunction with the informant's tip, provided probable cause for the search warrant.

B. *Admissibility of Manuel's Exculpatory Statements*

As mentioned above, the police arrested defendant's girlfriend, Kenyatta Manuel, before searching the house. A police report indicates that, after Manuel was arrested, she stated that everything in the house was hers. While being transported, she repeated, "Everything in that house

is my dope." She eventually pleaded guilty. During her plea hearing, she said that she thought

defendant was too "stingy" to distribute marijuana, and that she did not "know one way or another"

whether defendant distributed marijuana. Defendant's trial took place before Manuel's sentencing,

and she invoked the Fifth Amendment privilege against self-incrimination, refusing to testify. The

district court found her statements to be hearsay, rejecting admission under hearsay exceptions for

excited utterance and statement against interest. Fed. R. Evid. 803(2), 804(3). On appeal, defendant

contends that Manuel's statement that everything in the house was hers, made immediately after her

arrest, was an excited utterance. He argues that her statements made at the plea hearing were

statements against interest.

Evidentiary rulings are reviewed for abuse of discretion. *See General Elec. Co. v. Joiner*,

522 U.S. 136, 141 (1997); *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716-17 (6th Cir. 1999).

For an out-of-court statement to qualify as an excited utterance, there must be an event

startling enough to produce nervous excitement, no time to contrive or misrepresent, and the

statement must be made during the excitement of the event. *Haggins v. Warden*, 715 F.2d 1050,

1057 (6th Cir. 1983). At trial, a police officer testified that six or seven minutes intervened between

Manuel's arrest and the time she was placed in the back of the police car. Manuel made her

statement some time during the few minutes after that, while the officer was going back and forth

between the police car and Manuel's car. Although the officer testified that Manuel had said that

she was nervous, he denied that the word "exclaimed" in the police report suggested any particular

tone of voice in Manuel's statement. The district court looked to *United States v. Esparza*, 291 F.3d

1052, 1055 (8th Cir. 2002), which concluded that police discovery of contraband is ordinarily not

a startling event because it takes only the briefest reflection to conclude that a denial is the best strategy. Although Manuel chose to admit her guilt rather than deny that the drugs in the house were hers, the district court did not abuse its discretion in following the reasoning of *Esparza*. The ultimate question was whether her arrest was the type of event that would produce nervous excitement to the exclusion of reflection for seven or more minutes. The district court did not abuse its discretion when it concluded that the arrest would not have prevented Manuel from contriving a response within that period of time.

We now turn to the statements Manuel made at her change of plea hearing. Defendant contended that her statements are admissible as exceptions to the hearsay rule, as they were statements against interest. The district court disagreed. According to Rule 804(b)(3), hearsay is admissible as a statement against interest if it was "at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3).

Defendant does not offer a theory as to how Manuel's statements tending to exculpate him were contrary to her interests. Statements about the guilt of another person made in conjunction with an admission of guilt must be analyzed separately from the admission itself. *Williamson v. United States*, 512 U.S. 594, 599 (1994) ("statement" for hearsay purposes refers to "single declaration or remark"); *United States v. Canan*, 48 F.3d 954, 960 (6th Cir. 1995) . Moreover, Rule 804(b)(3) provides as follows: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly

indicate the trustworthiness of the statement." The district court correctly observed that, even if the exculpatory statements could be construed as contrary to Manuel's interests, their trustworthiness was not adequately supported by corroborating circumstances. Defendant argues that Manuel's post-arrest statement similarly exculpating defendant served as a corroborating circumstance. But Manuel's statement immediately following her arrest is not intrinsically more reliable than her statements at the plea hearing. The mere consistency between these statements is insufficient to "clearly indicate" the trustworthiness of any single statement.

C. *Sufficiency of the Evidence*

In reviewing the sufficiency of the evidence, an appellate court views "the evidence in the light most favorable to the government and will affirm the jury's verdict unless no rational trier of fact could have found, beyond a reasonable doubt," that defendant was guilty. *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Defendant asserts that he was a marijuana user but not distributor, and that Manuel was the armed distributor. However, defendant does not dispute the admission of the most important self-incriminating statement he made: "[A]t least I got caught with selling weed and some guns and you didn't get me with any cocaine." Moreover, he made statements admitting possession of two firearms as well as ownership of eight thousand dollars found in the heating vent at his house. The pay stubs found in the house showed that he had extremely low income from two jobs, yet he owned an expensive new vehicle and jewelry. Given the standard of review, the evidence is sufficient to support a verdict that he was distributing marijuana in a conspiracy with Manuel, and that he possessed firearms.

D. *Right to Counsel*

Immediately after defendant's arrest and after *Miranda* warnings were given to him, he made several self-incriminating statements, four of which he contended at trial were responses to questions: 1) the officer would find weed in the bedroom; 2) he had brought a Ruger .357 magnum revolver home from his cousin's house; 3) an AK-47 found in the house belonged to Manuel; and 4) concerning the marijuana found in the bedroom, "Oh, man, that's my bomb-ass weed. I smoke that sh–. Can't you just leave me a little bit?" Defendant moved unsuccessfully upon the eve of trial to suppress these and other statements, claiming to have suddenly recalled that he had asked for counsel at the time he made them. The district court found that defendant did not request counsel at the time he made these self-incriminating statements. The court noted that defendant admitted that he was under the influence of marijuana at the time he allegedly requested counsel, had extensive experience with the criminal justice system, and suddenly recalled his request on the eve of trial.

When reviewing the denial of a motion to suppress, the court reviews factual findings for clear error. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). This issue comes down to a credibility contest between defendant and two police officers who denied that defendant requested counsel. The district court did not clearly err in finding that defendant lacked credibility.

E. *Sentencing Issues*

Defendant was sentenced to 168 months of imprisonment based upon a total offense level of 30 and a criminal history category of VI. The sentence fell at the bottom of the resulting Guidelines range.

In the district court, defendant objected to two aspects of the sentencing calculation. First, the district court imposed a four-level upward adjustment based upon its finding that defendant possessed a firearm in connection with another felony offense, specifically, drug trafficking. U.S.S.G. § 2K2.1(b)(5).[1] Second, the court concluded that, based upon two prior convictions, defendant qualified as a career offender, U.S.S.G. § 4B1.1(a), which increased his criminal history category from IV to VI.

Since judgment was entered, the Supreme Court has decided *Blakely v. Washington*, 542 U.S. 296 (2004), and *Booker, supra*, which provide defendant with another avenue to attack his sentence. In addition to the objections raised below, on appeal defendant contends that the district court impermissibly found facts by a preponderance of the evidence that should have been submitted to a jury. Specifically, the court found that defendant possessed a stolen firearm, which increased his base offense level by one.[2] U.S.S.G. § 2K2.1(b)(4). He also objects to the finding that he committed the crimes of conviction while on probation for another offense, which added two points to his criminal history calculation. U.S.S.G. § 4A1.1(d).

As we recently explained, *Booker* applies to all criminal cases on direct review. *United States v. Barnett*, 398 F.3d 516, 524 (6th Cir. 2005) (citing *Booker*, 125 S.Ct. at 769); *United States v. Oliver*, 397 F.3d 369, 377-78 (6th Cir. 2005). However, because defendant did not raise a Sixth Amendment challenge in the district court, we review for plain error. *Oliver*, at 377-78; Fed. R.

---

[1] The 2003 version of the Federal Sentencing Guidelines were used in this case.

[2] Although this finding typically results in a two-level increase, because defendant had a cumulative offense level of more than 29, only one level was added.

Crim. P. 52(b). This court has already applied plain error analysis to dozens of *Booker* claims. In the vast majority of these cases, we have elected to remand to the district court for re-sentencing. *See, e.g., United States v. Alva*, 405 F.3d 383, 385 (6th Cir. 2005); *United States v. Hudson*, 405 F.3d 425, 444 (6th Cir. 2005); *Barnett, supra*; *Oliver, supra*; *United States v. McDaniel*, 398 F.3d 540, 547-48 (6th Cir. 2005). Moreover, we have recently concluded that plain error occurs where, as here, the district court sentenced defendant under what it perceived to be a mandatory, rather than an advisory, Guidelines regime unless "the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines scheme." *Barnett* at 529; *Alva* at 385 ("[E]ven absent a Sixth Amendment violation, this Court has decided that a defendant sentenced under the mandatory Guidelines regime is entitled to a remand for resentencing under the now-advisory Guidelines unless there is evidence in the record to rebut the presumption of prejudice.").

We turn now to the four errors that defendant contends infected his sentencing. The enhancements applied to defendant's base offense level for possession of a stolen firearm and use or possession of a firearm in connection with another felony offense each required the district court to engage in fact-finding that resulted in a five-level increase to the cumulative offense level. But for the application of these enhancements, defendant's sentencing range would have been 110 to 137 months of imprisonment, rather than 168 to 210. Because the maximum sentence established by facts beyond a reasonable doubt was less than that actually imposed, it violated the Sixth Amendment and requires us to remand for re-sentencing. *Oliver*, 397 F.3d at 378.

The government counters that, because the district court granted defendant a three-level downward departure, this case represents that rare instance in which the presumption of prejudice was rebutted. *See Barnett*, 398 F.3d at 529. However, as the government candidly acknowledges, this court in a prior published opinion has seen fit to remand for re-sentencing in light of *Booker* even when a defendant has benefitted from a downward departure. *United States v. McCraven*, 401 F.3d 693, 700 (6th Cir. 2005). We will follow suit. Even if we take into account the three-level downward departure granted by the district court, defendant's adjusted offense level was still two levels above that justified by the facts found beyond a reasonable doubt. As a result, his sentence of 168 months exceeded the maximum authorized by the appropriate Guidelines range.

Turning to defendant's two remaining assignments of error, we note that they are both premised upon prior convictions. In *Booker*, the Court reaffirmed the "prior conviction" exception that it first enunciated in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and retained in *Apprendi v. New Jersey*, 530 U.S. 466 (2000): "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756. It goes without saying that the enhancements to defendant's criminal history category for being a career offender and for committing the instant offense while on probation involve "prior convictions" to some extent. The question posed is whether this factor insulates them from the reach of *Booker*.

We begin with the objection raised in the district court: whether defendant qualifies as a career offender. The relevant Guidelines section provides as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). It is undisputed that the first two requirements for career offender status have been satisfied. However, defendant contends, as he did in the district court, that one of the predicate offenses, a 1999 conviction in the Michigan circuit court for "Fleeing and Eluding in the 4th Degree," did not constitute a "crime of violence," which the Guidelines define as a crime punishable by imprisonment for a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." U.S.S.G. § 4B1.2(a)(1). After noting that defendant pleaded guilty to resisting arrest as well as to "fleeing and eluding," the district court found that the conviction met the "crime of violence" definition:

> The Court is satisfied that, by its very nature, fleeing-and-eluding and resisting arrest involve a serious potential risk of physical injury to another. Unless a police officer is simply to acquiesce in somebody's fleeing and eluding, by definition, they're going to pursue them. And that, in this Court's considered opinion, poses a serious potential risk of physical injury to another.
>
> When that person is then apprehended, and in fact, resists arrest, the potential risk of physical injury to another implicit in the fleeing-and-eluding then becomes a serious potential risk of physical injury to another.

With respect to the second predicate felony, defendant maintains, as he did below, that his 1992 conviction for attempted possession with intent to deliver cocaine did not qualify as a felony because he received a sentence of two years' probation. The district court also rejected this argument:

> The fact that somebody can be sentenced to something less than more than one year, and in fact, receives that sentence, in no way takes it out of the category of crimes that are considered for purposes of determining whether somebody is a career

offender. The question is what were they charged with, what did they either plead guilty to or were convicted of, and what was the potential sentence for that crime. It does not involve an analysis of what sentence they actually received.

Rather than explain why, in his view, the district court erred in its determination, defendant elects to limit his argument on appeal to a reiteration of those points made to the district court.

Taking the predicate convictions in reverse order, we have no trouble affirming the rationale of the district court with respect to the 1992 conviction. As defined in the Guidelines, a felony conviction "means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless whether such offense is specifically designated as a felony and *regardless of the actual sentence imposed*." U.S.S.G. § 2K1.1, comment. (n.5) (emphasis added). In his written objections to the district court, filed on February 24, 2004, defendant conceded that, under the Michigan statute of conviction, he faced "a minimum sentence of as little as 1 year and to a maximum of 20 years." However, a judge could also impose a sentence of probation, which happened in defendant's case. As the commentary cited above makes clear, the actual sentence is not determinative; rather, it is potential exposure that determines whether a conviction qualifies as a prior felony conviction for career offender purposes.

With respect to whether a district court's finding that defendant's conviction for fleeing and eluding, when coupled with resisting arrest, constitutes a "violent felony," we begin by observing that this court has already held such questions are within the province of the district court even in the wake of *Booker*. *Barnett*, 398 F.3d at 524 ("case law establishes that *Apprendi* does not require the nature of prior convictions to be determined by a jury"); *see also United States v. Bradley*, 400

- 13 -

F.3d 459, 462 (6th Cir. 2005). This circuit takes the following approach when determining if a

conviction constitutes a "crime of violence" for career offender purposes:

> To examine this question, a "categorical approach" is used. *See United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999); *see also United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995) (citing as analogous *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)). Under this approach, the facts and circumstances underlying the defendant's felony conviction are generally of no consequence, and a court does no more than examine the definition of the crime provided by the state legislature. *See Arnold*, 58 F.3d at 1121 ("[T]he categorical approach avoids the impracticability and unfairness of allowing a sentencing court to engage in a broad factfinding inquiry relating to a defendant's prior offenses."). If the court were not convinced, however, that the statutory formulation of the offense encompassed conduct that posed a serious potential of physical injury, it could examine the indictment for the specific conduct charged.

*United States v. Herrera*, 375 F.3d 399, 403 (6th Cir. 2004) (citation omitted), *cert. denied*, 125

S.Ct. 926 (2005). In the instant case, the sentencing hearing transcript reveals that the district court

comported with this guidance to the letter, considering the elements of the crimes of conviction

without speculating about the actual circumstances. Furthermore, this court has held that, because

the Michigan fleeing-and-eluding statute increases the "serious *potential* risk of physical injury,"

it meets the Guidelines' definition of a "crime of violence." *United States v. Martin*, 378 F.3d 578,

583 (6th Cir. 2004) (emphasis original).

We apply the same logic to defendant's contention that the district court erred when it added

two points to his criminal history computation because he was on probation from the Michigan

fleeing-and-eluding conviction at the time of the instant offense. U.S.S.G. § 4A1.1(d). While we

recognize that at least one Justice has predicted the imminent demise of the *Almendarez-Torres*

exception for prior convictions, *Shepard v. United States*, 125 S.Ct. 1254, 1264 (2005) (Thomas, J.)

(concurrence), that has yet to happen. Until it does, that exception permits a district court to take notice that defendant was on probation when the charged offense occurred. U.S.S.G. § 4A1.1, comment. (n.4).

Despite our conclusion with respect to the computation of defendant's criminal history category, we note that this court has nonetheless remanded for re-sentencing in cases, such as the one before us, where we found no Sixth Amendment violation based upon imposition of career offender status. *See, e.g., United States v. Hamid*, 143 F. App'x 683(6th Cir. 2005). We have done so because the district court sentenced defendant under a mandatory Guidelines scheme. *Id.* at 688 (citing *Barnett*, 398 F.3d at 525-30).

## III.

The defendant's conviction is **affirmed** but his sentence is **vacated** and the cause **remanded** for further proceedings consistent with this opinion.