LUDINGTON, District Judge,
dissenting.
Respectfully, I write separately for three reasons. First, while decisions related to the law of evidence governing hearsay and its exceptions are to be reviewed applying the abuse of discretion standard, factual determinations made by the district court in applying that law are to be reviewed for clear error. The latter standard of review, in my view, is implicated here and I would find no error. Second, even if the district court erred in excluding Holly’s out-of-court rendition of the events, Ford’s substantial rights were not affected by the district court’s exclusion of the statement from evidence. Finally, I would reverse the district court’s determination that adequate evidence was presented to justify the jury’s conclusion that Ford was “reckless” and that the Maggards were entitled to an award of punitive damages.
I
Extrajudicial statements carry a presumption of unreliability, United States v. Clark, 18 F.3d 1337, 1342 (6th Cir.1994), because the declarant’s statements are not given under oath in the presence of the fact finder or subject to cross-examination. 2 McCormick on Evidence § 245 (Kenneth S. Broun ed., 2006) (citing California v. Green, 399 U.S. 149, 154, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). Testimony subject to these conditions enables the finder of fact to evaluate a witness’s perception, memory, narration, and sincerity to expose any inaccuracies. Fed.R.Evid. Art. VIII, advisory committee’s note (introductory note). The exceptions to the hearsay rule, developed through the common law, “proceed[ ] upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available.” Fed. R.Evid. 803, advisory committee’s note. There is no disagreement that for a statement to be admitted under the excited-utterance exception to the hearsay rule that: “1) there be an event startling enough to cause nervous excitement; 2) the statement be made before there is an opportunity to contrive or misrepresent; and 3) the statement be made while the person in under the stress of the excitement caused by the event.” United States *378 v. Beverly, 369 F.3d 516, 539-40 (6th Cir.2004).
Decisions about the facts of the case must, however, be made by the district court in order to apply the rules of evidence generally and, in this instance, to determine the applicability of the excited utterance exception to the hearsay rule. Fed.R.Evid. 104(a) directs that district courts are to resolve “preliminary questions concerning ... the admissibility of evidence.” In contrast to most determinations about consequential facts, the court, rather than the jury, resolves preliminary issues of fact for the simple reason that it is necessary to insulate the jury from inadmissible evidence. 21A Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5052.1 (2d ed.2005); see also 1 Jack B. Weinstein and Margaret A. Berger, Federal Evidence § 104.14(3) (Joseph M. McLaughlin, ed., 2d ed.1997). A court’s factual findings pursuant to Rule 104(a) “must be established by a preponderance of proof.” Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 n. 10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (citing Bourjaily v. United States, 483 U.S. 171, 175-176, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)); see also United States v. Conrad, 507 F.3d 424, 429 (6th Cir.2007). The Sixth Circuit reviews findings made under Rule 104(a) for clear error. Conrad, 507 F.3d at 429.
Turning to Holly’s statement in this case, the district court observed that the statement was made at the neighbor’s house at least thirty minutes after the accident and that Holly was “not still in the emotional state in which she undoubtedly was at the time of the accident itself.” (J.A. at 212-13). Certainly, the location and circumstances of Holly’s statement, while not determinative, support the district court’s decision that Holly was removed from the emotional impact of the accident. Lapses of time between the startling event and the statement are to be analyzed in context. The Sixth Circuit, for example, has concluded that a “nervous” statement made seven minutes after a police search and arrest not to be within the excited-utterance exception because the arrest would not create a period of excitement for that period. United States v. McGhee, 161 Fed.Appx. 441, 445 (6th Cir.2005) (unreported).
The district court may have taken Officer Capps’s statement out of context and Holly may, in fact, have remained under the sway of the startling event. Indeed, Officer Capps indicated that Holly was “naturally ... upset about what had just happened.” (J.A. at 328). However, as the district court observed, Officer Capps also testified that he did not “recall her being very upset” and that “she probably didn’t really know at the time the seriousness of [the accident].” Id. Thus, Officer Capps’s testimony reasonably supported the district court’s conclusion that Holly was sufficiently removed from the emotional events of her mother’s accident.
It is also true that the events of the accident were serious — e.g., Holly witnessed her mother being dragged by the vehicle, and Holly assisted her mother after the accident. However, Holly’s statement was made according to her memory some thirty to forty minutes after the accident and after she walked a distance to a neighbor’s house where she remained for the night.
Holly’s age can also cut in more than a single way when examining the factors relevant to the excited utterance exception to the hearsay rule. While a young witness might be less likely to fabricate or shade facts, it is equally plausible that Holly’s youthful age kept her from grasping the life-altering implications of her mother’s injuries. In contrast to an adult, *379 a ten-year-old child may not appreciate the gravity of such a horrific accident. Indeed, Officer Capps observed while taking Holly’s statement that she did not appear to appreciate the “seriousness” of the accident. Again, while the evidence available to the district court could be interpreted more than one way, the district court’s factual conclusions were grounded in the record.
One concluding point should be made here. The district court decided that Holly’s statement should be excluded from evidence at trial in response to a motion in limine based upon the parties’ competing views of the discovery. The district court did not reach its decision based upon its impression of Holly’s or Officer Capps’s in-court testimony, but upon its evaluation of the deposition transcripts. However, the' parties did not seek a hearing, nor did Ford contend that failing to grant a hearing was error. See Fed.R.Evid. 104(c). More importantly, Fed.R.Evid. 104(a) allocates the authority to resolve questions of preliminary fact to the district court in order to implement the rules of evidence and not because the trial judge is a superi- or finder of fact than a jury. Indeed, that principle would seem to be emphasized by the fact that in reaching decisions related to preliminary questions, with the exception of the rules related to privilege, the district court is “not bound by the rules of evidence.” Fed.R.Evid. 104(a) & 1101(d).
II
Even if the district court committed clear error in excluding Holly’s statement, there is no reason to believe that admission of Holly’s rendition of the events would have been material to the jury. Fed. R. Evid. 103(a) provides that an erroneous exclusion of otherwise admissible evidence is inconsequential unless “a substantial right of the party is affected.” An evidentiary error justifies the nullification of “a jury verdict where the error so altered the total mix of information submitted to the jury that it was substantially likely to have affected the verdict.” Stockman v. Oakcrest Dental Ctr., P.C., 480 F.3d 791, 804 (6th Cir.2007); see also Rush v. Ill. Cent. R.R. Co., 399 F.3d 705, 723-24 (6th Cir.2005).
While a child witness is presumed competent, trial courts are to remain alert to verify a child witness’s ability to understand the significance of the oath and that the child maintains the capabilities of observation, recollection, and narration. Fed.R.Evid. 601. Holly, as any witness with no driving experience, would likely be unfamiliar with the mechanics of a vehicle’s transmission, the ignition-key interlock, or brake-shift interlock, and would be less likely to perceive the events in the same way as a witness with such experience. In my view, the suggestion that exclusion of Holly’s testimony affected the substantial rights of Ford remains highly debatable conjecture.
More importantly, Ford’s expert witness, Frederick W. King, III, acknowledged the possibility that Dawn could have shifted the transmission out of park when entering the vehicle, but only if the ignition had been turned off. He explained that the brake-shift interlock would have prevented Dawn from accidentally shifting the gearshift if the engine was running. However, there was no evidence that Dawn turned the engine off and no evidence that the vehicle rolled solely in response to the grade of the driveway. Indeed, the district court excluded King’s opinion from being presented to the jury because the record did not support the proposition that the vehicle’s engine was off at the time of the accident. Ford proceeded to trial with its expert explaining to the jury that the Windstar’s engine *380 was operating and that the cause of the accident was Dawn’s failure to place the transmission in park. Mauldin rejected Holly’s statement to Officer Capps as “not consistent with the operational characteristics of a 1999 Ford Windstar van.” (J.A. at 89). While a party may offer competing explanations for an event, it is difficult to conclude that Ford’s “substantial rights” were affected by the omission of Holly’s testimony.
Ill
The award of punitive damages should, in my judgment, be reversed. The Mag-gards did not advance evidence demonstrating fraudulent, malicious, oppressive, consciously indifferent, or reckless conduct. Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 900 (Tenn.1992). “A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.” Id. (citing Tenn.Code Ann. § 39-ll-302(c)). Under this standard, punitive damages are only available for the “most egregious wrongs.” Id. at 901. “The tort must be intentional or fraudulent or a species of recklessness that contains an element of conscious wrongdoing. Under Tennessee law, the plaintiff must show by clear and convincing evidence that the defendant is aware of, but consciously disregards, a substantial and unjustifiable risk in a reckless way.” Cappello v. Duncan Aircraft Sales of Fl., Inc., 79 F.3d 1465, 1474 (6th Cir.1996).
The Maggards did not meet the clear and convincing standard by demonstrating that Ford’s conduct was reckless for many reasons. Neil Mizen, the Maggard’s expert witness, testified that the vehicle was “unreasonably dangerous” because Ford did not incorporate a warning system that would have sounded the vehicle’s horn. (J.A. at 264, 270). Mizen offered his opinion that the warning system would have prevented the accident, but he had not designed or tested his suggested warning system. (J.A. at 279).
In contrast, the record demonstrated that no other automobile manufacturer utilized the Maggards’ expert’s proposed warning system in 1999. Ford’s technology was consistent with the most advanced practice observed by vehicle manufacturers. The Maggards’ expert witness acknowledged both of these facts and provided the following testimony:
Q: And all these vehicles except the one Toyota that you mentioned earlier could be placed in between Reverse and Park in what you call Illusory Park, and therefore all of those vehicles are defective and unreasonably dangerous in that regard. Isn’t that right?
A. To that extent, yes.
Q: That would mean there are millions and millions of vehicles on the road today which are, in your opinion, defective and unreasonably dangerous with respect to the ability to place the transmission’s controls between Reverse and Park, correct?
A: Yes, it does.
(J.A. at 278). In order to find the Mag-gards’ expert’s opinion reasonable, one must accept the proposition that virtually every automobile manufacturer in the world was “reckless” in the design of their transmission.
Second, rather than installing a warning system, Ford demonstrated that it focused on improving the steering column and related transmission — a strategy that King testified that Ford believed was more effective in protecting Ford’s customers. King’s conclusion was grounded in Ford’s prior experience with customer reaction to *381 a similar warning system for seatbelts. While the district court noted King’s potential bias, the Maggards only offered their expert’s opinion to the contrary— which was not supported by testing to evaluate its effectiveness.
In addition, Ford’s decision to improve the transmission selection mechanism rather than to install a warning system was consistent with the standards promulgated by National Highway Traffic Safety Administration and the Society of Automotive Engineers, and was otherwise consistent with federal regulations.
Finally, the record is devoid of any evidence that Ford chose not to install the warning system for purely financial reasons. While King agreed during cross-examination that a warning system might be constructed for an estimated expense of three dollars per vehicle, the Maggards did not offer any evidence that Ford based its decision on the expense of the proposed device rather than effective protection of the customer. King testified that improvements were made instead to the steering column. The Maggards’ expert also acknowledged that the improvements to the steering column and gear shift lever were “good design[s]” intended to minimize occurrences of illusory park. (J.A. at 274-75, 288).
The evidence, in summary, did not demonstrate by clear and convincing evidence that Ford’s conduct was reckless under Tennessee law and it did not warrant the award of punitive damages.
IV
For these reasons, I respectfully dissent and would affirm the district court’s exclusion of Holly’s statement, while reversing the award of punitive damages.