NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0049n.06

No. 16-1741

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jan 20, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JAMAR HARRIS, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: MERRITT, MOORE, and STRANCH, Circuit Judges.

PER CURIAM. Jamar Harris, his brother Major Harris, and Lamhal Bell robbed a RadioShack, taking 13 iPhones valued at roughly $7,800. During the robbery, Bell pointed a firearm at a sales associate. A federal grand jury subsequently charged Jamar Harris as an aider and abettor with interfering with commerce by robbery in violation of 18 U.S.C. §§ 2 and 1951(a) and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c). Jamar Harris pleaded guilty to the robbery count but proceeded to trial on the firearm count. After a three-day trial, during which Major Harris and Bell testified, the jury convicted Jamar Harris on the firearm count. The district court sentenced him to 33 months of imprisonment for the robbery conviction followed by 60 months of imprisonment for the firearm conviction.

Jamar Harris filed a timely appeal challenging his firearm conviction. Harris argues that the district court erred in (1) denying his motion for a judgment of acquittal because the government failed to establish his advance knowledge that a firearm would be used or carried during and in relation to the robbery and (2) giving an instruction that allowed the jury to infer his advance knowledge.

We review de novo the district court's denial of Harris's motion for a judgment of acquittal. *See United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522-23 (6th Cir. 2015) (quoting *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010)).

Harris proceeded to trial on the charge of aiding and abetting a co-defendant in using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c). In *Rosemond v. United States*, 134 S. Ct. 1240 (2014), the Supreme Court held that, when a defendant is charged with aiding and abetting a § 924(c) offense, the government must prove that "the defendant actively participated in the underlying . . . violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Id*. at 1243. Contrary to Harris's arguments, the government presented sufficient evidence to establish that he had advance knowledge that his accomplices would use or carry a gun during the robbery and that he intended to further an *armed* robbery.

At trial, Major Harris testified that he called Jamar Harris and asked him if he wanted to make some money. Major Harris told Jamar Harris that they were going to "hit a lick on some phones." Although Major Harris testified that "hit a lick" is a "[v]ery broad term," he stated that he meant "To go and take something I guess, to go take the phones . . . [f]rom armed robbery, you know, took—that's the way we took them."

The RadioShack's security videos along with the witness testimony can reasonably be viewed as depicting the execution of a planned armed robbery, with each man playing a defined role. After the three men entered the RadioShack and the sales associate greeted them, Jamar Harris asked her about tablet protectors. As the sales associate assisted Jamar Harris, Bell grabbed her from behind, placing a hand over her mouth and putting a gun to her head. Jamar Harris, instead of acting surprised or hesitant when Bell displayed the firearm, sprang into action and led the way to the back storage area where the iPhones were stored. Jamar Harris and the sales associate then placed the iPhones into a bag while Bell stood by with the gun in his hand and Major Harris detained another employee. In addition to Major Harris's testimony about "hitting a lick," Jamar Harris's lack of surprise when Bell pulled out the firearm and his continued participation in the robbery provided circumstantial evidence for the jury to find that he had advance knowledge that a gun would be used during the robbery. *See Rosemond*, 134 S. Ct. at 1250 n.9 ("[I]f a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge.").

Even if Harris did not have knowledge of the firearm when he walked into the RadioShack, there was sufficient evidence for the jury to find the requisite advance knowledge under an alternate theory—that is, he had a realistic opportunity to withdraw when Bell revealed

the firearm. In *Rosemond*, the Supreme Court held that the requisite advance knowledge is "knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id*. at 1249-50. Here, Jamar Harris had not completed his role in the robbery when the firearm appeared. After Bell put the firearm to the sales associate's head, Jamar Harris led the way to the back storage area, passing by an exit door—the same exit door the three men later used to flee the scene. Instead of walking out that door, Harris chose to proceed to the storeroom, where he grabbed the iPhones and placed them in a bag. Harris argues that there was no evidence to support a finding that he saw the gun at any time during the robbery. Refuting this argument, the security videos show that Jamar Harris was standing right next to Bell when Bell pulled the gun from his pocket and put it to the sales associate's head and that Bell carried the firearm in his hand throughout the remainder of the robbery. Major Harris also confirmed that Jamar Harris was "[w]ithin a few feet" of Bell. Shannon Riley, one of the RadioShack employees, confirmed that the gun was visible, and that Jamar Harris was "a half a step behind" Bell.

As for Harris's argument that walking away "might increase the risk of gun violence" and that finishing the crime "might be the best or only way to avoid that danger," *Rosemond*, 134 S. Ct. at 1251, the government presented testimony that Bell had no intent to shoot anyone and that Bell and Major Harris agreed that the gun would not be fired during the robbery. The jury could also infer, based on the close relationship between Bell and Major Harris, that Bell would never shoot Major's younger brother. The jury could have found the requisite advance knowledge under this alternate theory.

We review de novo Harris's challenge to the jury instruction on advance knowledge. *See United States v. Burchard*, 580 F.3d 341, 345 (6th Cir. 2009). "[W]here the instructions, 'taken

as a whole, fairly and adequately submit the issues and applicable law to the jury,' our inquiry ends, as a defendant cannot be improperly prejudiced by a jury instruction that is warranted by the evidence and that accurately states the law." *United States v. Reichert*, 747 F.3d 445, 451 (6th Cir. 2014) (brackets omitted) (quoting *United States v. Zidell*, 323 F.3d 412, 427 (6th Cir. 2003)).

Following Sixth Circuit Pattern Criminal Jury Instruction 12.04, the district court instructed the jury as to the advance knowledge required under *Rosemond* as follows:

> Jamar Harris intended to aid and abet the crime of Using or Carrying a Firearm During and in Relation to a Crime of Violence if he had advance knowledge that Lahmal [sic] Bell and/or Major Harris would use or carry a firearm during the commission of a crime of violence. Advance knowledge means knowledge at a time a defendant can attempt to alter the plan or withdraw from the enterprise. Knowledge of the firearm may, but does not have to, exist before the underlying crime is begun. It is sufficient if Jamar Harris gained the knowledge in the midst of the other crime, as long as—excuse me—in the midst of the underlying crime so long as after acquiring the knowledge, Jamar Harris had a realistic opportunity to withdraw but instead chose to continue to participate in the crime. You may, but need not, infer that Jamar Harris had sufficient foreknowledge if you find that Jamar Harris chose to continue his participation in the crime after he knew that Lahmal [sic] Bell and/or Major Harris was using or carrying a firearm.

According to the "Use Note" for the pattern instruction, the last two sentences "should be used only if the evidence suggests that the defendant gained knowledge of the firearm in the midst of the underlying crime." Harris argues that this language should not have been used because the government's theory during the trial was that he had knowledge of the firearm when he walked into the RadioShack. However, the government explicitly made this alternative argument in its closing statement. Moreover, because there was evidence to support the theory that Harris gained knowledge of the firearm in the midst of the robbery, the district court did not err in including that language.

Harris also contends that this portion of the instruction could have been interpreted as *requiring* the jury to find that he possessed the requisite advance knowledge unless he chose not to continue his participation in the robbery and it was unrealistic for him to withdraw, amounting to an unconstitutional "burden-shifting presumption or conclusive presumption." The instruction did not require the jury to make such a finding. The district court instructed the jurors that they "may, but need not, infer" Harris's advance knowledge. Such an inference is allowed. *See Rosemond*, 134 S. Ct. at 1250 n.9 ("[T]he jury can permissibly infer from his failure to object or withdraw that he had such knowledge."). Furthermore, the district court instructed the jury that the burden of proof remained with the government "from start to finish."

Harris also argues that the district court failed to provide the jury with a definition of "crime of violence," thereby relieving the government of its burden to prove each element of the firearm count beyond a reasonable doubt. Harris never asked for an instruction defining "crime of violence." In fact, Harris proposed instructing the jury that "Interfering with Commerce by Robbery, Aiding and Abetting, is a crime of violence." Regardless, whether an offense is a "crime of violence" is a legal question for the court, not the jury. *United States v. Credit*, 95 F.3d 362, 364 (5th Cir. 1996) ("Our sister circuits have held that, in the context of jury charges, the definition of 'crime of violence' is a matter of statutory interpretation that is a 'purely legal judgment' for the court. We join these circuits, which have reasoned soundly that this is, indeed, a question of law that should not be submitted to the jury." (internal citations omitted)); *see United States v. Evans*, 699 F.3d 858, 862 (6th Cir. 2012) (recognizing that whether an offense qualifies as a "crime of violence" is a legal determination).

For these reasons, we **AFFIRM** Jamar Harris's firearm conviction.