NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0170n.06

No. 19-5495

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 25, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JESSE ROBERT COOP, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant | ) | |

---

**BEFORE: GRIFFIN, WHITE, and NALBANDIAN, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** A jury convicted defendant Jesse Robert Coop of one count of aiding and abetting Hobbs Act robbery (Count 1), one count of aiding and abetting the brandishing of a firearm during and in relation to a crime of violence (Count 2), and five counts of conspiracy to possess with intent to distribute oxycodone, oxycontin, morphine, hydrocodone, and nucynta (Counts 3 through 7, respectively). Coop appeals, and we **AFFIRM** his convictions on Count 1 and Counts 3 through 7, but **REVERSE** his conviction on Count 2.

## I. Background

### A. Factual Background

During the early morning hours of April 27, 2018, Coop and Keith Harrington, Coop's roommate, spent several hours—from approximately 1:40 a.m. to 5:40 a.m.—inspecting Coop's truck, walking back and forth between their Memphis apartment and the truck, and making at least two trips away from the apartment before returning around 5:40 a.m. Ten minutes later, Coop, walking quickly, walked a motorcycle from the apartment to the back of the truck. Shortly

1

thereafter, Coop and Harrington loaded the motorcycle into the truck bed and laid it flat. Both men then climbed in the truck cab and Coop drove the truck away from the apartment complex.

Coop and Harrington, aboard the motorcycle, arrived at a CVS store on Winchester Road in Memphis sometime between 6:00 a.m. and 6:10 a.m. Although there were numerous parking spots in front of the store, Coop parked the motorcycle in the back, near the pharmacy. Coop and Harrington walked around to the front of the store and entered about 6:10 a.m. Djuan Hollowell, the assistant store manager, and Ronna Thomas, the cashier, were working in the front of the store. Both employees greeted Coop and Harrington, but neither responded. Hollowell thought it unusual that Coop and Harrington walked so closely to each other. They walked to the back of the store, separating to walk in the same direction on opposite sides of an aisle. At the end of the aisle, Coop turned and walked down the other side of the aisle. As Coop walked, he paused to look down other aisles he passed, ultimately returning to the front of the store and leaving without making a purchase. After exiting the store, Coop headed to the rear of the building where he had parked the motorcycle. After Coop left the CVS, Harrington, who had similarly walked the store looking down side aisles, stopped, pulled a cap down over his face and walked toward the pharmacy in the rear of the CVS.

Dr. Isiah McCray, CVS's pharmacist, was bending over, pulling "deletions"— prescriptions that customers failed to pick up—when he heard a sound. R. 99, PID 587. He stood up, turned around, and saw Harrington approaching him with a revolver. McCray screamed and Harrington told him to "[c]alm down" and that this was "going to go smooth." *Id.* Harrington ordered McCray to go to the pharmacy's safe and told him that he was looking for oxycodone, hydrocodone and suboxone. Harrington grabbed a nearby trash can with a plastic trash liner for

McCray to place the drugs in. McCray then filled the plastic bag liner with drugs.[1] Several minutes later, Harrington told McCray that he had enough drugs and ran up the aisle with the bag of medications. As soon as Harrington left the pharmacy area, McCray called 911 and heard a motorcycle start up in the rear of the pharmacy.

One of the pill bottles McCray gave Harrington was a Pharma tracker that activates as soon as it is removed from the store, and records and transmits GPS, cell phone, and radio frequency signals to law enforcement. The data from these recordings allow law enforcement officials to recreate the device's movement. The government introduced this data as Exhibit 5. The device registered Coop and Harrington's departure from the CVS and reflected that they traveled from the store to a neighborhood on Kirby Road. After a short period where the tracker is stationary, the tracker moved from that neighborhood back to Coop and Harrington's apartment.[2] The apartment complex's surveillance footage shows that Coop and Harrington quickly drove back into the complex, with the motorcycle lying flat in the truck's bed, and parked next to their apartment. They then unloaded the motorcycle from the truck, and Coop pushed the motorcycle into the apartment while Harrington ran into the apartment carrying the trash bag. Once the motorcycle was inside the apartment, Coop exited the apartment, jumped back in the truck, and quickly parked it in an available space, running over a curb in the process. After parking, Coop

---

[1] McCray testified that the quantity of drugs he put in the bag, approximately 7500 pills, was not consistent with personal use.

[2] The government's theory was that Coop and Harrington had driven the truck from their apartment complex to a neighborhood on Kirby Road only a short distance from the CVS, where they parked the truck, unloaded the motorcycle, and rode it to the store. The government argued that Coop and Harrington switched vehicles to evade capture after the robbery, as Dr. McCray reported to police that he heard a motorcycle start up—not a truck—and law enforcement was looking for the wrong vehicle. The government argued that Coop and Harrington's movements after the robbery—first to Kirby Road and then back to their apartment complex—where they arrived in Coop's truck (with the motorcycle laid flat) support its theory.

3

removed most of the clothing he wore earlier, emerging from the truck shirtless before running back into the apartment.

Officers following the tracking device's signal arrived at the apartment complex approximately three minutes after Coop ran back inside the apartment. Officers eventually arrested both men when they exited their apartment several hours later, and obtained a search warrant to search the apartment and Coop's truck. Officer David Galloway of the Memphis Police Department testified that the motorcycle was found in the living room of the apartment alongside the trash bag full of pills. In Coop's truck, officers found a brown jacket and a baseball cap that Coop wore during the robbery.

### B. Procedural Background

Coop and Harrington were indicted on eight counts. Harrington entered a guilty plea, but Coop pleaded not guilty and proceeded to trial. Coop's attorney stated during opening statements that Coop was unaware that Harrington had robbed the CVS until Harrington came out of the CVS holding the bag of pills and a gun, at which point Coop feared for his own life and had no choice but to continue driving Harrington around. *See, e.g.*, R. 99, PID 582 ("And then [Coop] sees to his utter disbelief Mr. Harrington coming out there with a gun and a bag of pills and he says, 'Let's F'ing go.' And Mr. Coop sees the gun, and he realizes he's caught . . . 'If I say no, I'm going to get shot.'"). The government's proposed jury instructions included language from the Sixth Circuit Pattern Jury Instruction on a justification defense, as well as optional bracketed language to be used for an aiding-and-abetting-using-or-carrying-a-firearm charge when the defendant learns of the firearm during the offense.[3] At the close of the government's case-in-chief, Coop

---

[3] This language is as follows:

> It is sufficient if the defendant gained the knowledge in the midst of the underlying crime, as long as the defendant chose to continue to participate in the crime and had

moved for a judgment of acquittal, which the district court denied. The defense then rested without presenting any evidence, and the district court heard argument on final jury instructions. The United States and Coop agreed that there was no evidence presented at trial warranting the justification instruction. Although the United States originally included the optional bracketed language in the aiding-and-abetting-use-of-a-firearm instruction, it argued that there was no evidence that Coop learned of the firearm when Harrington came out of the CVS. Coop requested that the bracketed language remain in the final instruction. The district court concluded that the bracketed language was meant for those situations where "there's some question as to whether the Defendant was sort of in it from the beginning or joined along the way or never joined." R. 100, PID 714. "Put[ting] aside [Coop's] opening statement and just focus[ing] on the proof itself, there's no proof offered at this point that Mr. Coop wasn't just in from the beginning, if they find that he was in at all." *Id.* The district court removed the bracketed language and gave the pattern instruction.[4]

---

> a realistic opportunity to withdraw. You may, but need not, infer that the defendant had sufficient foreknowledge if you find that the defendant chose to continue his participation in the crime after the defendant knew an accomplice was using or carrying a firearm.

SCPJI 12.04(2)(C). The Use Note provides that these sentences should "be used only if the evidence suggests that the defendant gained knowledge of the firearm in the midst of the underlying crime."

[4] That instruction provides that:

> The Defendant intended to aid and abet the crime of using, carrying or brandishing a firearm during and in relation to a crime of violence if he had advance knowledge that an accomplice would use, carry or brandish a firearm during the commission of a crime of violence. "Advance knowledge" means knowledge at a time that Defendant can attempt to alter the plan or withdraw from the enterprise. Knowledge of the firearm may, but does not have to, exist before the underlying crime is begun.

SCPJI 12.04(2)(C); R. 64, PID 247.

The district court then charged the jury and it began deliberating. Sometime later, the jury sent a note to the court asking about two of the counts. As relevant here, the jury asked, "[h]ow can the Defendant be guilty of Count 2 if he never touched or saw the gun? Does the Government have to prove he knew a gun was involved?" R.100, PID 794. The district court simply referred the jury back to the jury instructions it had previously given, as reflected below in footnote 6. Thereafter, the jury convicted Coop of seven of the eight counts, acquitting him on Count 8, which charged him with conspiracy to possess with intent to distribute Concerta. Coop was sentenced to concurrent terms of 78 months' imprisonment on Count 1 and Counts 3 through 7, and to a consecutive term of 84 months' imprisonment on Count 2 (the statutory minimum).

Coop argues on appeal that the evidence was insufficient to support his convictions, that the district court erred by not giving the bracketed instruction from SCPJI 12.04(2)(C), that the district court compounded its error by not adequately responding to the jury's question, and that aiding and abetting Hobbs Act robbery is not a crime of violence.

## II. Discussion

### A. Sufficiency of the Evidence

Coop contends that the evidence was insufficient to support his convictions. We review de novo a challenge to the sufficiency of the evidence. *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010). We ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this determination, "we refrain from independently judging the credibility of witnesses or weight of the evidence." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996); *United States v. Caseer*,

399 F.3d 828, 840 (6th Cir. 2005) ("All conflicts in testimony are resolved in the government's favor, and every reasonable inference is drawn in favor of the government.").

### 1. *Aiding and abetting Hobbs Act robbery*

Count 1 of the indictment charged Coop with aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. §§ 2, 1951. A person commits a violation of 18 U.S.C. § 1951(a) if he:

> [I]n any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section.

A defendant may be held liable for aiding and abetting Hobbs Act robbery pursuant to 18 U.S.C. § 2[5] if the government demonstrates that he "(1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). "In proscribing aiding and abetting under 18 U.S.C. § 2, Congress used language that 'comprehends all assistance rendered by words, acts, encouragement, support, or presence,' even if that aid relates to only one (or some) of a crime's phases or elements." *United States v. Tibbs*, 685 F. App'x 456, 465-66 (6th Cir. 2017) (internal citation and footnote omitted). "Active participation in the planning phase of an armed robbery constitutes intent to bring about the offense." *United States v. Gooch*, 850 F.3d 285, 288 (6th Cir.), *cert. denied*, 137 S.Ct. 2230 (2017).

A reasonable jury could find that Coop aided and abetted Harrington's robbery of the CVS. The government introduced extensive video evidence that Coop and Harrington spent several

---

[5] 18 U.S.C. § 2 provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

hours before they left their apartment preparing the truck for the robbery. Shortly before departing the apartment complex, Coop assisted Harrington with moving the motorcycle from the apartment into the back of the truck and concealing it by laying it on its side. The apartment's video surveillance shows that Coop was always driving the truck—both before and after the robbery was committed. In addition, the CVS surveillance footage shows Coop and Harrington entering the store and walking down the main aisle, where Coop peers down each separate aisle before walking out of the store and around the side toward the back where the motorcycle was parked. From this evidence, a jury could reasonably conclude that Coop was assisting Harrington by "casing" the store to ensure that it was not crowded. Finally, after the robbery, the tracking device data shows that Coop and Harrington fled the scene, riding to a nearby neighborhood. After a short period— enough time to load the motorcycle on the truck—Coop drove Harrington back to their apartment.

The apartment's surveillance footage also supports the conclusion that Coop was aware of the robbery and attempting to conceal what had just transpired. Coop drove back into the apartment complex at a high rate of speed and the two quickly exited the truck, with Coop moving the motorcycle into the apartment and Harrington running into the apartment carrying the trash bag of drugs. Coop then ran out of the apartment and parked in the closest space he could, running over a curb in the process. He again exited the truck, removing the clothing that he had worn earlier and running bare-chested into the apartment. From this evidence, a reasonable jury could conclude that Coop was not merely an innocent bystander but actively participated in the planning, execution, and cover-up phases of the robbery.

### 2. *Aiding and abetting – 18 U.S.C. § 924(c)*

Next, Coop challenges the evidence to support that he aided and abetted the brandishing of a firearm during Harrington's robbery. Where a defendant is charged with aiding and abetting a

8

§ 924(c) offense, "the [g]overnment makes its case by proving that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond*, 572 U.S. at 67. "[I]f a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." *Id.* at 78 n.9.

We reverse Coop's conviction on this count because the evidence is insufficient to support a finding by a reasonable juror that Coop aided and abetted Harrington's brandishing of the firearm. The government argues that the evidence was sufficient to support Coop's conviction on this count because Coop's assistance—both before the robbery and after—was sufficient to enable a reasonable jury to conclude that Coop had advance knowledge that Harrington would use a gun during the robbery. We disagree.

The cases cited by the government are inapposite. The government relies on *United States v. Harris*, 676 F. App'x 558 (6th Cir. 2017) (per curiam), where we concluded that the government presented sufficient evidence that Harris had advance knowledge that his co-defendant would use a firearm during a robbery. *Id.* at 560. There, however, the government introduced the testimony of Harris' accomplice that he told Harris that they were going to "hit a lick on some phones," meaning take by armed robbery. *Id.* In addition, the government introduced video surveillance from the Radio Shack that showed that Harris was not surprised when his accomplice—standing right next to him—pulled a firearm during the robbery, and testimony from a Radio Shack employee that the gun was visible. *Id.* at 561. We concluded that this was sufficient evidence from which a reasonable jury could have concluded that Harris had advanced knowledge of his accomplice's possession of the firearm.

Unlike in *Harris,* the government presented no evidence that Coop knew that Harrington was armed. None of the surveillance video from the apartment complex before or after the robbery shows the firearm, and Harrington did not walk to the pharmacy area and pull out his weapon until well after Coop had exited the CVS. Further, there is no evidence that the gun was visible as Harrington left the CVS, and thus no evidence that Coop continued with the enterprise after learning of the weapon. The only evidence that the government references is the extensive evidence of Coop and Harrington's planning of the robbery. But crucially missing is any evidence from which a jury could conclude beyond a reasonable doubt that Coop knew that the robbery he was planning would involve a firearm. *See, e.g.*, *Rosemond*, 572 U.S. at 80 (noting the "requirement that a defendant in a § 924(c) prosecution must intend to further an *armed* [crime]").

Comparing this case to another case where we recently affirmed an aiding and abetting conviction makes our point plain. In *United States v. Johnson*, 702 F. App'x 349 (6th Cir. 2017), Johnson and his younger half-brother planned a series of armed bank robberies where Johnson, like Coop here, acted as the get-away driver. *Id.* at 351. The government introduced evidence— including Johnson's brother's testimony—showing that Johnson, unlike Coop here, knew that his brother would be armed during the bank robberies. Because of Johnson's advance knowledge of his brother's plan to use the firearm and his decision to nevertheless act as the getaway driver, we held that the evidence was sufficient to support the aiding and abetting conviction. *Id.* at 359. Because the government here failed to present any evidence from which a reasonable jury could find that Coop had knowledge of Harrington's use of the gun, we reverse his conviction.[6]

---

[6] Because we reverse Coop's conviction due to insufficient evidence, we do not reach his alternative arguments that the district court gave erroneous jury instructions or compounded its error by failing to properly respond to the jury's questions.

### 3. *Controlled substance offenses*

Counts 3 through 7 charged Coop with knowingly conspiring to possess with the intent to distribute controlled substances. In order to prove a conspiracy, the government must prove: "(1 an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *Welch*, 97 F.3d at 148-49. The government need not prove a formal agreement, as "[a] tacit or mutual understanding among the parties is sufficient." *United States v. Forrest*, 17 F.3d 916, 918 (6th Cir. 1994). "The evidence that the defendant agreed to join a conspiracy to violate the drugs laws 'need only be slight.'" *United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010) (quoting *United States v. Hodges*, 935 F.2d 766, 773 (6th Cir. 1991)). And "[p]articipation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances." *United States v. Hernandez*, 31 F.3d 354, 358 (6th Cir. 1994) (quoting *United States v. Christian*, 786 F.3d 203, 211 (6th Cir. 1986)). To prove possession of a controlled substance with intent to distribute, the government must prove that "(1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute." *Allen*, 619 F.3d at 522. Intent to distribute may be inferred from possession of a large quantity of controlled substances. *United States v. Wettstain*, 618 F.3d 577, 587 (6th Cir. 2010); SCPJI 14.01(3) ("Intent to distribute can be inferred from the possession of a large quantity of drugs, too large for personal use alone.").

The evidence was sufficient to support Coop's convictions on Counts 3 through 7. The evidence showed that Harrington and Coop walked into the store together, walked past the cash registers, made sure that the store was empty, and then Harrington walked back to the pharmacy and demanded that Dr. McCray open the safe where controlled substances were stored, telling him the specific types of drugs he wanted. Harrington then left the CVS with the see-through trash bag containing the drugs and returned to the back of the building where Coop was waiting with the

11

motorcycle to take them back to where Coop had parked the truck. When they arrived back at their apartment, Coop hid the motorcycle while Harrington ran into the apartment with the plastic bag of controlled substances. When police executed a search warrant of the home, they found the motorcycle and the pills in the living room. Finally, the large quantity of drugs involved was sufficient to support an inference of distribution. Construing this evidence in the light most favorable to the government, a reasonable jury could conclude that Coop joined in a conspiracy to possess with the intent to distribute the controlled substances.

## B. Crime of Violence

Finally, Coop contends that aiding and abetting a Hobbs Act robbery is not a crime of violence. Whether an offense qualifies as a crime of violence for purposes of 18 U.S.C. § 924(c) is reviewed de novo. *United States v. Rafidi*, 829 F.3d 437, 443 (6th Cir. 2016).

As Coop acknowledges, his argument is foreclosed by binding circuit precedent. We have determined that aiding and abetting Hobbs Act robbery is a crime of violence under the force clause of 18 U.S.C. § 924(c)(3)(A). *United States v. Richardson*, 906 F.3d 417, 426 (6th Cir. 2018), *vacated on other grounds by Richardson v. United States*, 129 S. Ct. 2713 (2019); *United States v. Richardson*, 948 F.3d 733, 742 (6th Cir. 2020). We are bound by that prior panel decision, and we accordingly reject Coop's argument.

## III.

For the foregoing reasons, we **AFFIRM** Coop's convictions on Count 1 and Counts 3 through 7, but **REVERSE** his conviction on Count 2 and **REMAND** for resentencing.